[No. B195536. Second Dist., Div. Seven. Jan. 18, 2008.]

COUNTY OF LOS ANGELES, Defendant and Appellant, v.
RAYTHEON COMPANY et al., Plaintiffs and Respondents.

## COUNSEL

Raymond G. Fortner, Jr., County Counsel, and Albert Ramseyer, Principal Deputy County Counsel, for Defendant and Appellant.

Bewley, Lassleben & Miller, Jeffrey S. Baird, Joseph A. Vinatieri and Jason C. Demille for Plaintiff and Respondent Raytheon Company.

Pillsbury Winthrop Shaw Pittman, Lawrence L. Hoenig and Richard E. Nielsen for Plaintiff and Respondent The DirecTV Group, Inc.

## OPINION

**PERLUSS, P. J.**—The County of Los Angeles (County) appeals from the judgment entered in this property tax refund action, contending the trial court erred in ruling Raytheon Company and the DirecTV Group, Inc., successors in interest to Hughes Aircraft Company (Hughes), have standing to seek a

refund of property tax levied in the tax year 1991–1992 on parcels occupied by Hughes under long-term leases that require Hughes to pay the real property taxes. The County also contends the refund action is time-barred notwithstanding the parties' written stipulation to waive any limitations defense to this refund action. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Hughes's Long-term Leases*

In December 1983 Hughes entered into a 55-year triple net lease (consisting of an initial term of 25 years plus six additional five-year options) to occupy two office buildings on land identified as Los Angeles County Assessor's parcel Nos. 4138-004-014 (014) and 7310-016-066 (066) and reported to the county assessor as locations 01-11 and 01-14 for personal property tax purposes. In accordance with the express terms of the lease, Hughes (or Raytheon, Hughes's successor, which took over the lease in 1997) has paid all real and personal property taxes on the properties, including the real property tax for the fiscal year 1991–1992.

In December 1986 Hughes's Space & Communications Group, a division of Hughes, entered into a long-term lease (consisting of an initial term of 10 years, plus three additional five-year options) to occupy a building on land identified as Los Angeles County Assessor's parcel No. 4139-017-042 (042) and reported to the county assessor as location 01-17 for personal property tax purposes. In accordance with the terms of the lease, Hughes (or DirecTV, Hughes's successor, which took over the lease in 1994) has paid all real property taxes on the property, including the tax for property tax fiscal year 1991–1992.

### 2. *The County Assessor's Issuance of Escape Assessments in 2001*

Prior to 2001 the County conducted a mandatory audit of Hughes's personal business property at the three locations involved in this litigation (locations 01-11, 01-14, 01-17). In June 2001, at the conclusion of the audit, the assessor issued escape assessments pursuant to Revenue and Taxation Code section 531[1] with respect to some of Hughes's business personal property that, according to the assessor's office, had escaped taxation during the fiscal year 1991–1992.

---

[1] Revenue and Taxation Code section 531 provides in part, "If any property belonging on the local roll has escaped assessment, the assessor shall assess the property on discovery at its value on the lien date for the year for which it escaped assessment."

Statutory references are to the Revenue and Taxation Code.

### 3. *Raytheon's and DirecTV's Applications for Reduction in Assessments*

Following the June 2001 issuance of the escape assessments, on August 2, 2001, Hughes, on behalf of its successors in interest, Raytheon and DirecTV, filed with the County Assessment Appeals Board (AAB) applications for a reduction in the 1991–1992 tax assessments as to parcels 014, 066 and 042 (collectively, affected parcels) pursuant to sections 469, subdivision (b)(3), and 1605, subdivision (e), authorizing a taxpayer to seek review of an earlier assessment following the issuance of an escape assessment concerning property at the same location.[2] In those applications Hughes sought to reduce the assessment issued on parcels 066 and 014 in the 1991–1992 tax year from $15,457,128 and $93,320,758 to $3,014,520 and $52,100,000, respectively, and to reduce its real property tax assessment for the same year on parcel 042 from $21,949,182 to $13,625,000. In each of the applications Hughes stated its intent that the applications be considered a claim for refund under section 5097. (See § 5097, subd. (b) ["application for a reduction in an assessment filed pursuant to Section 1603 shall also constitute a sufficient claim for refund under this section if the applicant states in the application that the application is intended to constitute a claim for refund . . ."].)

On November 18, 2002, the AAB rejected each of the three applications for reduction of assessment without holding an evidentiary hearing, concluding each of the applications seeking reassessment of properties assessed 10 years earlier was untimely.

### 4. *Hughes's Claim for Refund*

On January 17, 2003 Hughes, on behalf of Raytheon and DirecTV, filed with the County Board of Supervisors multiple claims for refund of real and personal property taxes for each of the tax years 1991–1992 through

---

[2] Section 469, subdivision (b)(3), provides, "If the result of an audit for any year discloses property subject to an escape assessment, then the original assessment of all property of the assessee at the location of the profession, trade, or business for that year shall be subject to review, equalization and adjustment by the county board of equalization or assessment appeals board pursuant to Chapter 1 (commencing with Section 1601) of Part 3 of this division, except in those instances when the property had previously been equalized for the year in question."

Section 1605, subdivision (e), provides in part, "If an audit of the books and records of any profession, trade, or business pursuant to Section 469 discloses property subject to an escaped assessment for any year, then the original assessment of all property of the assessee at the location of the profession, trade, or business for that year shall be subject to review, equalization and adjustment by the county board of equalization or assessment appeals board pursuant to this chapter, except in those instances when that property had previously been equalized for the year in question by the county board of equalization or assessment appeals board. The application shall be filed with the clerk no later than 60 days after the date on which the assessee was notified. . . ."

1994–1995 pursuant to section 5097, once again asserting, among other things, the county assessor had overassessed the value of the affected parcels for the 1991–1992 fiscal tax year. For parcel Nos. 014 and 066, Hughes requested refunds of $419,806.11 and $161,005.89, respectively. For parcel No. 042, Hughes requested a refund of $84,823.83. Hughes explained in its claim for refund that it had exhausted its administrative remedies by seeking a hearing before the AAB, but the AAB had denied its applications for reduction in assessments without a hearing on November 18, 2002.

On April 2, 2003 the County denied the claims for refund relating to the properties assessed during the 1991–1992 fiscal tax year on the ground the claims "did not meet the provisions in the Revenue and Taxation Code for granting a refund." The denial letter advised Raytheon and DirecTV that, under section 5141, they had six months from the April 2, 2003 denial of their claim (or until Oct. 2, 2003) to commence an action in the superior court "seeking judicial review of this denial."[3]

5. *The Parties' Stipulation Waiving Any Statute of Limitations Defense to a Refund Action in Superior Court*

Because the County's April 2, 2003 denial of the refund claims for the 1991–1992 tax fiscal year did not address all of Hughes's pending claims, on September 30, 2003, just prior to the October 2, 2003 deadline to file a refund action in superior court, Raytheon and DirecTV (as successors to Hughes), on the one hand, and the County, on the other hand, entered into a stipulation waiving any statute of limitations defense in any action challenging the County's denial of the refund claims. The stipulation provided, "The parties recognize . . . that many of the issues involved in the claim(s) for refund which have been denied may be rendered moot or changed substantially by further actions of the [AAB] regarding the Applications for Changed Assessments that are still pending before the [AAB] (on related rulings or determinations). Moreover, depending on the [AAB]'s action in those pending appeals, the possibility exists that additional claims for refund may be filed. [¶] Therefore, in order to avoid piecemeal litigation of the issues involved in the 1991 through 1994 audit and the Assessor's issuance of escape assessments, to minimize costs and attorney's fees and to conserve judicial resources, the parties stipulate and agree as follows: [¶] . . . [¶] . . . In consideration of Hughes['s] agreement not to bring an immediate suit for refund on the rejected claim(s) for refund, the County of Los Angeles agrees not to assert as a defense (either expressly or implicitly) in any subsequent

---

[3] Section 5141, subdivision (a), provides, "An action brought under this article, except an action brought under Section 5148, shall be commenced within six months from and after the date that the board of supervisors or city council rejects a claim for refund in whole or in part."

action between the parties, and waives the right to rely upon all statutes of limitation, including but not limited to, *Revenue and Taxation Code, § 5141 and § 5147*, with respect to the time for commencing an action in which Hughes seeks a refund of tax based on the grounds asserted in the claim(s) for refund that were denied by the County on April 2, 2003." The stipulation further provided the waiver of the limitations defense would expire six months after the date the County rejected the last of Hughes's remaining claims for refund in whole or in part.

### 6. *The Instant Action in the Los Angeles County Superior Court*

On September 2, 2005, within six months of the County's resolution of the last of Hughes's applications for refund on March 3, 2005, Raytheon and DirecTV filed the instant action in the Los Angeles County Superior Court. The complaint states three causes of action for a refund, each asserting the assessed value of one of the affected parcels for the fiscal tax year 1991–1992 was excessive and Raytheon or DirecTV is entitled to a tax refund.

On November 1, 2005 the County demurred to the complaint, alleging the action was time-barred because it was not filed within six months of the AAB's denial of the refund claims, as required by section 5141, subdivision (a). Raytheon and DirecTV filed an opposition, which argued the complaint specifically alleged the September 30, 2003 stipulation extended its time to file the action. The trial court overruled the demurrer and scheduled the case for trial.

On April 5, 2006 in anticipation of trial, the parties entered into a "Stipulation of Facts and Issues To Be Adjudicated," which identified the following issues to be decided in a bench trial: (1) Whether, upon the County's issuance in June 2001 of the escape assessments at locations 01-14 and 01-11, Raytheon became statutorily entitled pursuant to sections 469, subdivision (b)(3), and 1605, subdivision (e), to file an application for reduction in assessment with respect to assessments levied in the fiscal tax year 1991–1992 for parcel Nos. 014 and 066 and (2) whether, upon the issuance in June 2001 of an escape assessment at location 01-17, DirecTV became entitled pursuant to sections 469, subdivision (b)(3), and 1605, subdivision (b), to file an application for reduction in assessment with respect to parcel No. 042. The stipulation provided that, if Raytheon and DirecTV prevailed on their contention they were entitled to file an application for reduction in assessments with respect to the affected parcels, the court "shall remand this matter to the AAB for a valuation hearing" with respect to all three parcels.

Following the submission of trial briefs and a hearing, the court found in favor of Raytheon and DirecTV. The court concluded Raytheon and DirecTV,

as the tax obligors under long-term leases, had standing to seek a refund from the County; the County's June 2001 issuance of escape assessments directed to Hughes's personal property at locations 01-11, 01-14 and 01-17 for the 1991–1992 fiscal tax year entitled Raytheon and DirecTV (as Hughes's successors) to seek reassessment of the affected parcels for the same tax year pursuant to sections 469, subdivision (b)(3), and 1605, subdivision (e); and, in light of the September 30, 2003 waiver by the County of the statute of limitations, the court action was not time-barred. The court remanded the matter to the AAB for a hearing on the merits of the refund claims.

## CONTENTIONS

The County contends lessees of real property (whether Hughes or Hughes's successors in interest, Raytheon or DirecTV) lack standing to seek a reassessment of the leased property and tax refund following the issuance of an escape assessment directed to a lessee's (here Hughes's) own property and not to the property of the owner of the parcel sought to be reassessed. Alternatively, the County contends this action is time-barred under section 5141, subdivision (a), because it was not filed within six months of the AAB's November 18, 2002 denial of Hughes's application for a reduction in assessment, which Hughes had designated as a claim for refund.

## DISCUSSION

### 1. Standard of Review

This case, presented to the trial court on stipulated facts, concerns issues of statutory interpretation and thus presents only questions of law. Accordingly, our review is de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]; *Placer County Local Agency Formation Com. v. Nevada County Local Agency Formation Com.* (2006) 135 Cal.App.4th 793, 803 [37 Cal.Rptr.3d 729].)

### 2. Overview of the Governing Statutes and Regulations and the Effect of the Issuance of the Escape Assessments

■ In California all real property and business personal property is taxable "in proportion to its full value" unless specifically exempted. (Cal. Const., art. XIII, § 1, subd. (b).) Administration of this constitutionally mandated real and personal property tax is governed by statutes enacted by the Legislature (see, e.g., Rev. & Tax. Code, §§ 50–5911) and regulations promulgated by the State Board of Equalization (see, e.g., Cal. Code Regs., tit. 18, §§ 1–1051).

■ In accordance with the governing statutes and administrative regulations, each year each county assessor is required, on or before July 1, to compile and index the property tax roll, a list of taxable real and personal property located in the county and their assessed values. (§§ 601, 602, 616.) A taxpayer who wishes to challenge the assessment has two possible administrative remedies: The taxpayer may "petition the board for a reduction in an assessment" pursuant to section 1603 (§ 1604, subd. (b)(1)); alternatively, or sometimes in addition to a section 1603 application for a reduction in assessment, the taxpayer may file a claim for tax refund pursuant to section 5097. (§ 1604, subd. (b)(1); see also *Northrop Grumman Corp. v. County of Los Angeles* (2005) 134 Cal.App.4th 424, 436 [36 Cal.Rptr.3d 71] ["[a] taxpayer who challenges the imposition of a property tax has two administrative remedies available. One remedy is to apply for an assessment reduction (an assessment appeal) under . . . section 1603. The other remedy is to file a claim for a refund under . . . section 5096 et seq."].)[4]

■ Ordinarily, once an assessment issues the taxpayer has only a limited time to challenge the assessment, either by application for reduction in assessment or claim for refund; otherwise the assessment is final. (§§ 1603, 5097.) However, that limited time is extended if during an audit the assessor discovers property that has escaped assessment for a particular tax year and thereafter issues an "escape assessment" directed to that property pursuant to section 531.[5] In that circumstance the taxpayer may file an administrative appeal and challenge the assessment not only with respect to the property that had escaped assessment, but also as to *all* personal and real property of the assessee assessed at the location during the same tax year. (§§ 469, subd. (b)(3), 1605, subd. (e);[6] see also Cal. Code Regs., tit. 18, § 305.3, subd. (a) ["if the result of an audit discloses property subject to an escape assessment for any year covered by the audit, then pursuant to section 1605 of the Revenue and Taxation Code, an application may be filed for review, equalization, and adjustment of the original assessment of all property of the

---

[4] The filing of a section 1603 application for reduction in assessment may also constitute a claim for refund: "An application for a reduction in an assessment filed pursuant to Section 1603 shall also constitute a sufficient claim for refund under this section if the applicant states in the application that the application is intended to constitute a claim for refund. If the applicant does not so state, he or she may thereafter and within the period provided in paragraph (2) of subdivision (a) [four years after making the payment sought to be refunded or within one year after the mailing of the notice, whichever is later] file a separate claim for refund of taxes extended on the assessment which applicant applied to have reduced pursuant to Section 1603 or Section 1604." (§ 5097, subd. (b).)

[5] For the text of section 531, see footnote 1, *ante.*

[6] For the text of sections 469, subdivision (b)(3), and 1605, subdivision (e), see footnote 2, *ante.*

assessee at the location of the profession, trade, or business for that year, except any property that has previously been equalized for the year in question . . ."].)[7]

### 3. *Raytheon and DirecTV Have Standing to Pursue Their Refund Claims*

The County contends the trial court erred in concluding Raytheon and DirecTV have standing to appeal the assessment of parcels they do not own but only occupy as long-term tenants. It acknowledges that an appeal from the issuance of an escape assessment authorizes a review of "all [the] property of the assessee" (§ 469, subd. (b)(3); see also § 1605, subd. (e) [same]),[8] not just the property that was the subject of the escape assessment. However, the County argues the affected parcels are not the property of the assessee—Hughes—but actually belong to Hughes's lessors, or more particularly, the legal owners of the parcels.[9]

■ Well-established principles of statutory construction require that we interpret a statute to effectuate the Legislature's intent. (*Flannery v. Prentice*

---

[7] Addressing a 2001 legislative amendment extending to businesses with a full value of less than $400,000 the same right to appeal an assessment of all property at the locations affected by an escape assessment that has long been afforded to businesses with a full value of $400,000 or more, the legislative counsel to the State Board of Equalization explained the purpose of permitting a taxpayer to appeal all the assessed property rather than just the property subject to the escape assessment: "The purpose of opening the original assessment of the entire property to appeal is to protect taxpayers from misallocation of value within the total assessment. When an entire property is originally assessed, a taxpayer may agree with the value determined by the assessor for the entire property but may disagree with the allocation of the value among real and personal property. As a result, the taxpayer does not appeal the overall assessment, even though some components are overvalued and some undervalued. Years later, after an audit, the assessor could propose an escape assessment for the undervalued component but leave the overvalued component unchanged. By permitting the taxpayer to appeal the original assessment of all the property at the location, the county assessment appeals board has the power of oversight to ensure that the entire assessment (the original assessment and the escape assessment) is correct." (State Bd. of Equalization, Legis. Bull. (2001) Assem. Bill No. 645 (2001–2002 Reg. Sess.) Property Tax Legis., p. 15 at <http://www.boe.ca.gov/legdiv/enact/ptleg/01ptbulletin.pdf> [as of Jan. 18, 2008].) A similar rationale for the 2001 amendment is reflected in the legislative history of the amendment. (See Assem. Com. on Revenue and Taxation, com. on Assem. Bill No. 1433 (2001–2002 Reg. Sess.) as introduced Apr. 16, 2001.)

[8] "All property of the assessee" as used in sections 469, subdivision (b)(3), and 1605, subdivision (e), means "any property, real or personal, assessed to the assessee, or the assessee's statutory or legal predecessor in interest, at the location of the profession, trade, or business for the year of the audit." (Cal. Code Regs., tit. 18, § 305.3, subd. (b)(5).)

[9] All parties agree that the lease assignment or sublease from Hughes to Raytheon and DirecTV does not affect the proper interpretation of the governing statutes. The question is whether an escape assessment directed to the property of a long-term lessee of real property allows the lessee or its successor in interest to reopen prior assessments not only with respect to its own property but also as to the leased property.

(2001) 26 Cal.4th 572, 578 [110 Cal.Rptr.2d 809, 28 P.3d 860]; *People v. Craft* (1986) 41 Cal.3d 554, 559 [224 Cal.Rptr. 626, 715 P.2d 585].) To determine this intent, we initially examine the language of the statute, giving the words their plain and ordinary meaning. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) However, we do not consider statutes in isolation but rather read every statute " 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " (*People v. Pieters* (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420], quoting *Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].)

Here, the statutory scheme is clear that, as a tenant under a long-term lease that exceeds 35 years on two of the affected properties, Hughes (or its successor in interest, Raytheon) is the beneficial owner of the property for property tax purposes. (See, e.g., § 61, subd. (c) ["[t]he creation of a leasehold interest in taxable real property for a term of 35 years or more (including renewal options)" effects a change of ownership for property tax purposes]; Cal. Code Regs., tit. 18, § 462.100, subd. (a)(1)(A) ["the creation of a leasehold interest in real property for a term of 35 years or more" constitutes change in ownership of such real property]; *E. Gottschalk & Co. v. County of Merced* (1987) 196 Cal.App.3d 1378, 1385–1386 [242 Cal.Rptr. 526] ["the term of 35 years chosen by the Legislature [to effect a change of ownership] is not an arbitrary or unreasonable figure. 'Thirty-five years was felt to be the length of term generally required for lease financing by institutional lenders and, therefore, approximately equivalent to the fee . . .' "].) As such, Hughes has standing to seek a reassessment of parcels 066 and 014 following issuance of an escape assessment directed to property at the two locations.

On all the affected parcels, moreover, Hughes was the party assessed and paid all the property taxes pursuant to the express terms of the applicable leases. As the entity that was assessed and paid the tax, Hughes is, at minimum, a "party affected" with standing to file both an application for reduction in assessment and a refund claim. (See § 1603, subd. (a) ["a] reduction in an assessment on the local roll shall not be made unless *the party affected or his or her agent* makes and files with the county board a verified, written application showing the facts claimed to require the reduction and the applicant's opinion of the full value of the property . . ." (italics added)]; § 1603, subd. (f) [person seeking refund must attest he, she or it is either "the owner of the property or the person affected (i.e., a person having a direct economic interest in the payment of the taxes on that property)"]; § 5140 ["person who paid the tax" may bring refund action in superior court following city or county's denial of refund claim]; Cal. Code Regs., tit. 18, § 301, subd. (g) [" '[p]erson affected' or 'party affected' is any person or

entity having a direct economic interest in the payment of property taxes on the property for the valuation date that is the subject of the proceedings under this subchapter, including the property owner [or] a *lessee required by the property lease to pay the property taxes . . .*" (italics added)].)

The County concedes that payment of the property taxes authorizes Raytheon and DirecTV, as "affected parties," to file a refund action under section 1603 or 5140 (see, e.g., *IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1302 [32 Cal.Rptr.3d 656] [only person who paid property tax has standing to seek refund under § 5140]), but argues that nothing entitles them to file a refund action outside the ordinary limitations period following issuance of an escape assessment directed solely to Hughes's personal property. According to the County, sections 1605, subdivision (e), and 469, subdivision (b)(3), expressly permit Hughes to reopen the assessment on all of *its* real and personal property (see §§ 1605, subd. (e) [authorizing reopening original assessment of "all *property of the assesee*" at the location that was the subject of the escape assessment (italics added)], 469, subd. (b) [same]); those statutes do not entitle Hughes to reopen an assessment on property not belonging to it.

In support of its position the County relies exclusively on "Example 2" provided in California Code of Regulations, title 18, section 305.3, subdivision (e), which states: "Taxpayer DRK owns and is assessed for land and a building. DRK leases the land and building to RCJ. RCJ operates a business in DRK's building and is assessed for business tangible personal property and trade fixtures. The county assessor conducts an audit of RCJ, and the result of the audit discloses property subject to an escape assessment. RCJ, as the assessee, can file an application for equalization on his personal property and trade fixtures only. RCJ cannot file an application on DRK's land and building as this is not property of the assessee. In addition, since DRK is not a person affected pursuant to rule 302 of the subchapter, he cannot file an application on either his land and building or RCJ's personal property and fixtures."

■ The County's reliance on Example 2 is unpersuasive. First, the example does not appear to address (at least not expressly) lessees that are beneficial owners under leases that exceed 35 years, such as Raytheon, nor does it discuss "persons affected" by virtue of their payment (in accordance with the lease's terms) of the property tax for which the taxpayer seeks a refund. (See Cal. Code Regs., tit. 18, § 301, subd. (g).) Second, the County's extrapolation from Example 2 to the case at bar is inconsistent with the underlying purpose of sections 469, subdivision (b)(3), and 1605, subdivision (e). (See *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340 [33 Cal.Rptr.2d 109, 878 P.2d 1321] [court should determine

whether "the literal meaning of a statute comports with its purpose" in order to avoid "absurd results"]; *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 433 [30 Cal.Rptr.3d 755, 115 P.3d 41].) Those statutes authorize an otherwise untimely appeal of an original assessment following an escape assessment to protect the taxpayer from a "misallocation of . . . the total assessment." (State Bd. of Equalization, Legis. Bull. (2001) Assem. Bill No. 645 (2001–2002 Reg. Sess.) Property Tax. Legis., p. 15 at <http://www.boe.ca.gov/legdiv/enact/ptleg/01ptbulletin.pdf> [as of Jan. 18, 2008].)[10] The taxpayer may not agree with an assessed value of particular real or personal property, but may agree with the overall assessed value and therefore elect not to appeal the overall original assessment. However, once an escape assessment issues, it changes the overall assessment. "By permitting the taxpayer to appeal the original assessment of all the [real and personal] property at the location [following issuance of an escape assessment, the assessor can] ensure that the entire assessment (the original assessment and the escape assessment) is correct." (*Ibid.*)

That rationale applies with equal force to the instant situation. As the entity incurring the tax obligation for the real property assessment pursuant to the terms of the lease, Hughes (as County acknowledges) had the right to seek reduction in the 1991–1992 tax assessment under section 1603 or a tax refund under section 5097 as a "party affected." Initially, it did not do so in this case, presumably because it accepted the overall assessment. However, when the escape assessments issued on its property following an audit in 2001, they changed the overall assessment. At that point, it makes no sense to prohibit Hughes, as the tax obligor on the parcels, from opening up the assessment not only on the personal property subject to the escape assessment, but also on all other property as to which it would be entitled, as a "party affected," to claim a reduction in assessment or tax refund at the time of the original assessment.

### 4. *The Refund Action Is Not Time-barred*

The County alternatively argues this action is time-barred notwithstanding its stipulation to waive any limitations defense. The County contends it agreed only to waive and extend the statute of limitations to file a refund action in superior court challenging the County's April 2, 2003 denial of the January 17, 2003 refund claims, not to waive or extend any limitations period with respect to filing a refund action challenging the AAB's November 18, 2002 denial of the applications for a reduction in assessments, which Hughes also designated a "claim for refund." The County then asserts that this action, seeking a valuation hearing before the AAB, effectively challenges the propriety of the AAB's November 18, 2002 denial of Raytheon's and

---

[10] See footnote 7, *ante.*

DirecTV's application for a reassessment of certain real properties for the 1991–1992 tax year, not the denial of the January 17, 2003 refund claims. Accordingly, the stipulation is inapplicable; and the action, filed more than six months following the AAB's November 2002 denial of the applications for a reduction in assessments, is time-barred. The trial court rejected this argument, as do we.

■ The September 30, 2003 stipulation waiving and extending the limitations period stated that, in consideration of Hughes's agreement not to immediately bring suit in superior court challenging the April 2, 2003 denial of its January 17, 2003 refund claims, the County agreed "not to assert as a defense (either expressly or implicitly) in any subsequent refund action between the parties, and waive[ed] the right to rely upon, all statutes of limitation," with respect to "an action in which Hughes seeks a refund of tax based on the grounds asserted in the claim(s) for refund that were denied by the County on April 2, 2003." The grounds asserted in the claims for refund denied by the County on April 2, 2003 are the same as those asserted in the instant action (and the same asserted before the AAB in Aug. 2001): The parcels were overvalued in the 1991–1992 tax year, and Raytheon and DirecTV are entitled to a tax refund. The stipulation was plainly intended to permit a refund action in superior court based on the improper valuation of the affected parcels without the County claiming the action was time-barred. (*Palmer v. City of Long Beach* (1948) 33 Cal.2d 134, 142 [199 P.2d 952] [stipulations are agreements subject to ordinarily rules employed to interpret contracts]; *Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341 [83 Cal.Rptr.2d 340] ["court's paramount consideration in construing the stipulation is the parties' objective intent when they entered into it . . ."].) Whatever the reasons for County's agreement to waive and extend the statute of limitations to permit this refund action, it did so; and, as a result, it may not now claim the action is time-barred. (See Code Civ. Proc., § 360.5 [authorizing written waiver of applicable statute of limitations].)[11]

---

[11] The controlling language in the parties' stipulation is not ambiguous; and the County, in any event, did not submit extrinsic evidence in the trial court to support its contrived interpretation of the waiver of the limitations defense. In addition, there can be no question that Raytheon and DirecTV understood the stipulation permitted them to pursue their refund action in superior court and that the County was well aware of that understanding. To the extent the County attached a different meaning to the language in the stipulation and failed to explain that difference to Raytheon and DirecTV, intending to take advantage of their mistake, we construe the language in accordance with the understanding of Raytheon and DirecTV. (*Merced County Sheriff's Employees' Assn. v. County of Merced* (1987) 188 Cal.App.3d 662, 673 [233 Cal.Rptr. 519]; see Rest.2d Contracts, § 20, subd. (2) ["[t]he manifestations of the parties are operative in accordance with the meaning attached to them by one of the parties if (a) that party does not know of any different meaning attached by the other, and the other knows the meaning attached by the first party; or (b) that party has no reason to know of any different meaning attached by the other, and the other has reason to know the meaning attached by the first party . . ."].)

## DISPOSITION

The judgment is affirmed. Raytheon and DirecTV are to recover their costs on appeal.

Woods, J., and Zelon, J., concurred.