[No. A133109. First Dist., Div. Three. Apr. 20, 2012.]

SALMON PROTECTION AND WATERSHED NETWORK, Plaintiff and Respondent, v.
COUNTY OF MARIN et al., Defendants and Respondents;
CHARLES CHALMERS et al., Interveners and Appellants.

196

## COUNSEL

Charles D. Chalmers, in pro. per., and for Interveners and Appellants.

Environmental Law Clinic-Stanford Law School, Deborah A. Sivas, Alicia E. Thesing, Leah J. Russin; and Michael W. Graf for Plaintiff and Respondent.

Matthew Vespa and Ellen Medlin for Sierra Club as Amicus Curiae on behalf of Plaintiff and Respondent.

Patrick K. Faulkner, County Counsel, Nancy S. Grisham, Deputy County Counsel; Remy Thomas, Moose and Manley, James G. Moose, Jennifer S. Holman and Jeannie Lee for Defendants and Respondents.

Brownstein Hyatt Farber Schreck, Lisabeth D. Rothman, Todd R. Leishman; Perkins Coie and Stephen L. Kostka for California Building Industry Association as Amicus Curiae on behalf of Defendants and Respondents.

Downey Brand, Christian L. Marsh and Andrew M. Skanchy for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendants and Respondents.

OPINION

**POLLAK, Acting P. J.**—Can a public agency and a party disputing the adequacy of an environmental impact report (EIR) prepared in connection with the adoption of a general plan amendment effectively agree to toll the limitations period for filing a petition challenging the adequacy of the EIR? We agree with the trial court that they may do so and that the court properly sustained a demurrer to a complaint in intervention alleging the untimeliness of the petition that was later filed when the negotiations prompting the tolling agreements failed to produce a settlement.

## Background

On September 14, 2010, Salmon Protection and Watershed Network (SPAWN)[1] filed a petition for a writ of mandate against the County of Marin and its board of supervisors (collectively, the county) alleging the EIR that the county certified in connection with the adoption of the Marin Countywide General Plan update (Update) failed to comply with the requirements of the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.).[2] The county certified the EIR and filed a notice of determination in compliance with section 21152, subdivision (a) and section 15094 of the CEQA guidelines (Cal. Code Regs., tit. 14, § 15094) on November 6, 2007. Subsequently, SPAWN and the county entered a series of tolling agreements extending the 30-day limitation period in section 21167 for the filing of a complaint challenging the sufficiency of the EIR until September 14, 2010, during which time the parties engaged in unsuccessful settlement negotiations. In March 2011 a group of property owners was granted leave to intervene to allege that SPAWN's petition is untimely because the purported agreement tolling the statute of limitations is not permitted under CEQA. Following briefing and argument, the trial court sustained without leave to amend demurrers to the complaint in intervention filed by SPAWN and by the county, holding that the tolling agreements are not prohibited by CEQA or by Government Code section 65009, upon which interveners also relied. The court observed, "CEQA encourages parties to avoid litigation through pretrial settlements and negotiated dispositions, which may include the use of tolling agreements."

The Marin Countywide General Plan requires the county to implement stream conservation area policies, and the Update in connection with which the EIR was prepared does so for the San Geronimo Valley watershed.

---

[1] SPAWN is a project of Turtle Island Restoration Network, a California nonprofit corporation.

[2] All statutory references are to the Public Resources Code unless otherwise noted.

SPAWN challenges the adequacy of the cumulative impacts analysis in the EIR. Its petition prays for a writ of mandate ordering the county "to set aside its CEQA findings in relation to impacts on coho salmon and steelhead in the San Geronimo watershed and to prepare a supplemental EIR that properly addresses the impacts of the [Update] and the potential for mitigation and/or alternatives that would avoid or substantially reduce significant impacts to these species," and for an injunction prohibiting the county "from approving development projects within stream zones in the San Geronimo watershed until the county has complied with the writ."

Interveners are owners of properties within the affected area of the San Geronimo Valley watershed. Their complaint in intervention alleges that "[t]he pendency of the action creates uncertainty . . . about what 'development' if any will be allowed on their properties in the future, and this in turn reduces the present value of their properties. [¶] The injunctive relief sought by the petition would directly and immediately restrict interveners from any development, or further development, on their properties, and this would interfere with their freedom to use their properties in a manner consistent with the County general plan and pertinent zoning. This in turn would cause or continue diminution in the value of their properties." Alleging that CEQA, "taken as a whole, evidences a legislative intent that the limitations stated in section 21167 are mandatory and jurisdictional" and that the tolling agreements therefore were ineffective, interveners requested the court to find that SPAWN's petition was untimely filed and to dismiss the petition.

The county, although defending the sufficiency of the EIR, joins SPAWN in defending the validity of the tolling agreements. The League of California Cities, the California State Association of Counties, the California Building Industry Association, and the Sierra Club have filed amicus curiae briefs arguing that tolling agreements serve a constructive function, are regularly entered and do not violate any statutory proscription.

Following the dismissal of the complaint in intervention, interveners have timely appealed.

## Discussion

Section 21167, subdivision (b) provides: "An action or proceeding alleging that a public agency has improperly determined whether a project may have a significant effect on the environment shall be commenced within 30 days from the date of the filing of the notice required by . . . subdivision (a) of section 21152." Interveners contend this limitation can neither be waived nor tolled by agreement.

 Interveners are correct that there is a strong public policy, recognized in numerous decisions, favoring the prompt disposition of CEQA challenges. CEQA not only requires the prompt filing of complaints alleging that a project has been approved despite noncompliance with any of its provisions (§ 21167), but the act establishes numerous shortened time limits for the conduct of the litigation and the rendering of a final decision (e.g., §§ 21167.1, 21167.4, 21167.6). There is "a key policy served by these statutes: 'the prompt resolution of challenges to the decisions of public agencies regarding land use. [Citation.]' [Citation.] CEQA 'contains a number of provisions evidencing the clear "legislative determination that the public interest is not served unless challenges under CEQA are filed promptly" [citation].' [Citation.] . . . 'Patently, there is legislative concern that CEQA challenges, with their obvious potential for financial prejudice and disruption, must not be permitted to drag on to the potential serious injury of the real party in interest.' " (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 50 [105 Cal.Rptr.3d 181, 224 P.3d 920]; see also, e.g., *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 500 [106 Cal.Rptr.3d 858, 227 P.3d 416] ["CEQA's purpose to ensure extremely prompt resolution of lawsuits claiming noncompliance with the Act is evidenced throughout the statute's procedural scheme."].)

There is an equally strong public policy, however, recognized in just as many cases, to encourage the settlement of controversies in preference to litigation. Our Supreme Court "recognized a century ago that settlement agreements ' "are highly favored as productive of peace and good will in the community," ' as well as ' "reducing the expense and persistency of litigation." ' [Citation.] The need for settlements is greater than ever before. 'Without them our system of civil adjudication would quickly break down.' " (*Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 277 [10 Cal.Rptr.2d 859, 834 P.2d 119]; see also, e.g., *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1166 [232 Cal.Rptr. 567, 728 P.2d 1202] [" 'Settlements of disputes have long been favored by the courts . . . .' "].) Indeed, CEQA itself includes provisions encouraging the parties to reach a settlement after litigation has commenced (§§ 21167.8, 21167.9) and, in 2010, section 21167.10 was added to the statute to authorize prelitigation mediation which automatically tolls the statutory limitation periods until the completion of the mediation (§ 21167.10, subd. (d), added by Stats. 2010, ch. 496, § 9).[3]

---

[3] This provision is to remain in effect only until January 1, 2016, unless extended by further legislation. (§ 21167.10, subd. (g)(1).)

If all parties directly involved in a controversy concerning the adequacy of an EIR or compliance with other provisions of CEQA are disposed to seek a mutually acceptable means of resolving the controversy and agree to toll the period for commencing litigation, the interests of both those parties and the public are promoted by permitting the settlement discussions to proceed without the distraction of litigation. If those challenging compliance with CEQA must file suit within the short 30-day deadline or lose their right to do so, time and effort that otherwise could be devoted to the search for common ground would be devoted to the demands of litigation—from preparing the pleadings to complying with the accelerated schedule required of CEQA litigation. The parties would be required to devote themselves and their resources to sharpening their disagreement rather than to resolving it. Too often this would be unnecessarily time-consuming and costly to all concerned, and would severely limit efforts to resolve differences in a mutually acceptable manner.

The county tells us that "[s]uch tolling agreements conserve judicial and local agency resources that have become increasingly strained in recent years. The use of tolling agreements to extend the statute of limitations period for the purpose of avoiding litigation and preserving local agency resources has therefore become common practice of Marin County (as well as many other counties and cities)." According to the amicus curiae brief submitted by the League of California Cities and the California State Association of Counties, "CSAC and League member agencies across California have, for years, relied on tolling agreements to aid in prompt resolution of land use disputes. If this vital tool is removed, many tolling agreements now in effect will be invalid and project opponents will feel compelled to immediately protect their rights and enter time-consuming and costly litigation." According to the amicus curiae brief of the California Building Industry, "[I]t is not uncommon for litigation in the trial court and Court of Appeal to go on for two to three years, or more, before a final decision is reached. That is why a tool, such as a tolling agreement, which facilitates meaningful settlement discussions aimed at heading off litigation is so important." The amicus curiae brief of the Sierra Club concurs: "tolling agreements avoid unnecessary litigation and are consistent with CEQA's overarching objective of minimizing environmental harm. In the Sierra Club's experience, tolling agreements provide an

We see no logic in interveners' argument that the inclusion of this automatic tolling provision implies the invalidity of tolling agreements entered when settlement discussions are not initiated pursuant to section 21167.10. The reasons for tolling the limitation period are equally applicable in either situation.

Equally unpersuasive is the significance interveners attach to statements in sections 21080.1 and 21167.2 that decisions concerning CEQA compliance are final and conclusive "unless challenged as provided in Section 21167" (§ 21080.1, subd. (a)) or if no action "is commenced during the period prescribed in subdivision (c) of Section 21167" (§ 21167.2). Neither statement is concerned with whether the time limitations in section 21167 may be extended by agreement.

efficient means to achieve positive environmental outcomes, especially in cases where settlement appears likely, a case may soon become moot, or negotiations could be complicated by the increased adversarial nature of litigation." The high cost in time and resources frequently incurred in CEQA litigation has been noted in numerous decisions of the California courts (e.g., *County of Orange v. Superior Court* (2003) 113 Cal.App.4th 1, 6 [6 Cal.Rptr.3d 286]), confirming the importance of making every reasonable effort to avoid such litigation whenever possible.

Constructive negotiations often will require the parties to conduct additional research, obtain additional studies, and confer with other affected parties, often including other "responsible agencies" (§ 21069). As the present case illustrates, these and other steps inherent in constructive negotiations may require far longer than 30 days to complete. To be sure, the present case also illustrates that such negotiations may not always be fully successful, but in many cases they will be.[4] Certainly the chances of success are greater if the parties have the opportunity to pursue their discussions without being compelled to engage in litigation.

For these very reasons, the desirability and validity of agreements tolling other limitation periods have long been recognized. (E.g., *Brownrigg v. deFrees* (1925) 196 Cal. 534, 541 [238 P. 714] ["It has been expressly held by this court in numerous decisions that the privilege conferred by the statute of limitations is not a right protected under the rule of public policy but is a mere personal right for the benefit of the individual which may be waived."]; *State Loan etc. Co. v. Cochran* (1900) 130 Cal. 245, 251–252 [62 P. 466]; *County of Los Angeles v. Raytheon Co.* (2008) 159 Cal.App.4th 27, 39–40 [70 Cal.Rptr.3d 788].) Indeed, the right to waive for up to four years the many limitation periods specified in the Code of Civil Procedure is explicitly recognized in Code of Civil Procedure section 360.5. In all contexts, there are private and public advantages in promptly resolving the controversies to which the myriad limitation periods apply. But the courts repeatedly have recognized the more compelling reasons to permit parties to extend the statutory period for filing suit. Although the time period for filing a CEQA action may be shorter than in most other contexts, the reasons for permitting the affected parties to extend those time limits are no less compelling.

The policy favoring prompt resolution of CEQA disputes and the policy of encouraging settlement are not irreconcilable. In many cases, settlement will resolve the controversy much sooner than could be accomplished by trial and appeal. More fundamentally, the principal reason for seeking the prompt resolution of a CEQA dispute is to minimize the

---

[4] The county advises the court that although no settlement was reached in this case, through their negotiations the parties did narrow the issues that remain in controversy.

inevitable costs of delaying a project while the validity of the project's approval is litigated. " 'Patently, there is legislative concern that CEQA challenges, with their obvious potential for financial prejudice and disruption, must not be permitted to drag on *to the potential serious injury of the real party in interest.*' [Citation.] 'The Legislature has obviously structured the legal process for a CEQA challenge to be speedy, so as to prevent it from degenerating into a guerrilla war of attrition by which project opponents wear out project proponents.' " (*Stockton Citizens for Sensible Planning v. City of Stockton, supra,* 48 Cal.4th at p. 500, italics added; see also, e.g., *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors, supra,* 48 Cal.4th at p. 50.) Since a party whose project has been approved by a public agency is a real party in interest in a challenge under CEQA to the validity of the approval and must be named as such (§ 21167.6.5, subd. (a)),[5] an agreement to toll the limitation period, to be effective, must have the concurrence of the recipient of the approval that is being challenged.[6] The project proponent, the public agency, and the party asserting noncompliance with CEQA are the three parties that must agree to toll the limitation period.[7] If the project proponent wishes to proceed in accordance with the expedited statutory schedule, presumably believing that approach is most likely to speedily remove the challenge, the proponent need not agree to toll the limitation period. However, if the approval recipient is prepared to extend the date for filing a complaint in the belief that negotiations are more likely to yield a prompt resolution of the dispute and permit the project to proceed, the principal reason for urging haste with litigation disappears.

 The dispute in the present case differs from the prototypical CEQA controversy concerning the approval of a site-specific project in that the

[5] Section 21167.6.5, subdivision (a), as it read prior to 2011, began: "The petitioner or plaintiff shall name, as a real party in interest, any recipient of an approval that is the subject of an action or proceeding brought pursuant to Section 21167, 21168, or 21168.5 . . . ." The provision now begins: "The petitioner or plaintiff shall name, as a real party in interest, the person or persons identified by the public agency in its notice filed pursuant to subdivision (a) or (b) of Section 21108 or Section 21152 . . . ." (§ 21167.6.5, subd. (a), as amended by Stats. 2011, ch. 570, § 3.)

[6] Although the recipient of an approval is a necessary party to the proceedings within the meaning of Code of Civil Procedure section 389, subdivision (a), and may be an indispensable party, i.e., a party without whom the action may not "in equity and good conscience" proceed (Code Civ. Proc., § 389, subd. (b); see, e.g., *County of Imperial v. Superior Court* (2007) 152 Cal.App.4th 13 [61 Cal.Rptr.3d 145]), under some circumstances the recipient will not be an indispensable party (*Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 847–862 [134 Cal.Rptr.3d 274]).

[7] The situation is no different in principle if the public agency has taken action to authorize itself to proceed with a project. In that case, it is the public agency itself that stands to be harmed by delayed or extended litigation over CEQA compliance and therefore is the only other party that must agree with the party challenging CEQA compliance to enter an effective tolling agreement.

project for which an EIR was prepared here is an amendment to a countywide plan, involving no individual project proponent.[8] Although interveners' properties may indirectly be affected by the update to the countywide plan, interveners are not real parties in interest in litigation challenging its adoption. In granting their motion for intervention (Code Civ. Proc., § 387), the trial court stated that interveners are "necessary" parties within the meaning of Code of Civil Procedure section 389, subdivision (a) only because of SPAWN's request for an injunction prohibiting the approval of development projects on their properties, and that they are not "indispensable" parties within the meaning of Code of Civil Procedure section 389, subdivision (b). (See fn. 6, *ante.*) Section 21167.6.5, subdivision (d) provides explicitly that the failure to name persons other than those who are real parties in interest is not grounds for dismissing the proceedings. Not being real parties in interest, their approval is unnecessary to the entry of an agreement to toll the running of the limitations period.

■ Interveners point to the jurisprudential maxim recognized in our Civil Code that "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." (Civ. Code, § 3513.) The limitation period in section 21167 undoubtedly serves public purposes but, as just indicated, its primary purpose is to protect project proponents from extended delay, uncertainty and potential disruption of a project caused by a belated challenge to the validity of the project's authorization. While others may be incidentally affected by an agreement to defer potential litigation, their indirect concerns are not sufficient to prevent those directly affected from waiving or agreeing to extend the limitation period.

■ The language of Civil Code section 3513 might be read to imply that the county cannot agree to extend the limitation period because only those for whose benefit a law is "solely" intended may waive the benefit of that law. But "the use of the word 'solely' in this statute does not compel the conclusion that waiver is precluded if there is any incidental benefit to the public from a statutory right. . . . Because it is difficult to conceive of a statutory right enacted *solely* for the benefit of private individuals that does not also have an incidental public benefit, a literal reading of Civil Code section 3513 would eliminate the established rule that rights conferred by statute may be waived unless specific statutory provisions prohibit waiver."

---

[8] CEQA of course defines very broadly a "project" for which an environmental analysis is required. (§ 21065.) The adoption of a general planning document is a project for CEQA purposes. (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 381–383 [60 Cal.Rptr.3d 247, 160 P.3d 116]; *Fullerton Joint Union High School Dist. v. State Bd. of Education* (1982) 32 Cal.3d 779, 794–795 [187 Cal.Rptr. 398, 654 P.2d 168], disapproved on different grounds in *Board of Supervisors v. Local Agency Formation Com.* (1992) 3 Cal.4th 903, 918 [13 Cal.Rptr.2d 245, 838 P.2d 1198].)

*(Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1048–1049, fn. 4 [68 Cal.Rptr.2d 758, 946 P.2d 427].)[9] Thus, the provision in the Permit Streamlining Act (Gov. Code, § 65920 et seq.) requiring a government agency to approve or disapprove an application for a development project within prescribed time limits and deeming the application approved if not acted upon within those limits (Gov. Code, § 65956, subd. (b)) can be waived by the developer. In so holding, the Supreme Court observed: "Some public benefit is . . . inherent in most legislation. The pertinent inquiry, therefore, is not whether the law has any public benefit, but whether that benefit is merely incidental to the legislation's primary purpose." *(Bickel,* at p. 1049.) The court agreed with the concurring and dissenting opinions below that " '[t]he primary beneficiary of the time limits is the [developer]" and that the general public may only *"incidentally* benefit from expedited land use decisions . . . .' " *(Ibid.)*

Similarly, in this case interveners are at most only incidentally affected by the adoption of the amendment to the countywide plan. They have submitted no specific project to the county for its approval. To the extent that the plan update has any adverse effect on their property, they were entitled to be heard before the board of supervisors approved the Update, and their arguments as to the asserted deficiencies of the EIR and invalidity of the plan's approval may be considered by the court in these writ proceedings.[10] That interveners may request intervention to address the merits of the county's approval does not mean that they have the right to compel commencement of litigation while the parties to the dispute pursue settlement discussions. Nor should they. There is no order in effect precluding the county from considering any permit requests interveners may submit. Should the county voluntarily defer the consideration of permit applications in the affected watershed pending resolution of the CEQA controversy, interveners have no right to challenge such a discretionary decision by the county. (See *Land Waste Management v. Contra Costa County Bd. of Supervisors* (1990) 222 Cal.App.3d 950, 959 [271 Cal.Rptr. 909].)

Interveners argue further that even if the tolling agreement was effective to prevent the running of the limitation period imposed by section 21167, the action nonetheless is time-barred by the 90-day limitation period imposed by

---

[9] See also, e.g., *Brownrigg v. deFrees, supra,* 196 Cal. at page 541, where with reference to Civil Code section 3513, the Supreme Court stated that "no law established for a public reason is contravened by a private agreement to waive the statute of limitations. . . . [¶] It has been expressly held by this court in numerous decisions that the privilege conferred by the statute of limitations is not a right protected under the rule of public policy but is a mere personal right for the benefit of the individual which may be waived."

[10] Interveners requested intervention solely to raise the limitations issue. They did not request the right to address the merits of SPAWN's petition. The arguments in opposition to the petition presumably will be made by the county.

Government Code section 65009, subdivision (c)(1)(A). Section 65009 is found within the Planning and Zoning Law (Gov. Code, § 65000 et seq.). The section begins with the legislative finding "that a legal action or proceeding challenging a decision of a . . . county . . . has a chilling effect on the confidence with which property owners and local governments can proceed with projects. Legal actions or proceedings filed to attack, review, set aside, void, or annul a decision of a . . . county . . . *pursuant to this division*, including, but not limited to, the implementation of general plan goals and policies that provide incentives for affordable housing, open-space and recreational opportunities, and other related public benefits, can prevent the completion of needed developments even though the projects have received required governmental approvals" (Gov. Code, § 65009, subd. (a)(2), italics added). The following subparagraph states as the purpose of the statute "to provide certainty for property owners and local governments regarding decisions made *pursuant to this division*." (*Id.*, subd. (a)(3).) Government Code section 65009 then provides, among other things and with exceptions not here relevant, that "no action or proceeding shall be maintained" (*id.*, subd. (c)(1)) "[t]o attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a general or specific plan" (*id.*, subd. (c)(1)(A)) unless "the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision" (*id.*, subd. (c)(1)).

The parties disagree whether this provision has any application to the present action since SPAWN's petition alleges only violations of CEQA and does not allege any violation of the provisions of the Planning and Zoning Law. They disagree further with respect to the import of subdivision (g) of section 65009 of the Government Code which provides, with one inapplicable exception, that "this section shall not affect any law prescribing or authorizing a shorter period of limitation than that specified herein." SPAWN and the county argue that since section 21167 does provide a shorter limitation period, subdivision (g) renders section 65009 inapplicable. Interveners, relying largely on *Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110 [23 Cal.Rptr.3d 282], argue that the two statutory provisions can be reconciled to mean that if section 21167 can be tolled by agreement, Government Code section 65009 then applies to provide an absolute limit for filing and serving a complaint challenging the government action.[11] As set forth in subdivision (e) of section 65009 of the Government

---

[11] In *Royalty Carpet Mills, Inc. v. City of Irvine, supra,* 125 Cal.App.4th at page 1118, the party challenging the issuance of a conditional use permit for failure to comply with CEQA failed to timely serve a petition for a writ of mandate challenging the issuance of the use permit. The parties stipulated that the petitioner's motion for an extension of the time to make service should be granted with respect to the limitation in section 21167.6, subdivision (a), but the city issuing the permit sought and obtained dismissal of the action on the ground that

Code, "[u]pon the expiration of the time limits provided for in this section, all persons are barred from any further action or proceeding."

■ We need not decide whether Government Code section 65009 can ever apply to an action based solely on alleged CEQA violations because even on the assumption that it can, we see no reason to conclude that the parties directly affected are precluded from agreeing to toll its limitation periods, any more than they are precluded from tolling the shorter period prescribed in CEQA. Interveners argue that Civil Code section 3513, discussed above, precludes a tolling agreement with respect to the limitation periods in Government Code section 65009. This contention may have more force with respect to Government Code section 65009 than to section 21167, because section 65009 applies to suits challenging the adoption of general plans and states explicitly that it is intended to provide certainty to property owners as well as to local governments. Nonetheless, we believe that the general public remains only an incidental beneficiary of Government Code section 65009, thus permitting the governmental agency to waive or extend its limitation period. The governmental agency controls the timing for adoption of a general plan and confronted with objections, may defer adoption pending further study and discussions if it sees fit to do so. The 90-day time limit in Government Code section 65009, subdivision (c)(1)(A) requires service of a complaint only on "the legislative body," and the public body is the only necessary party to the suit challenging the adoption of the plan.[12] Having adopted the plan and being confronted with objections that it considers potentially meritorious or capable of resolution through negotiations, there is little reason to read into the statute a prohibition of the agency agreeing to extend the limitation period while engaging in negotiations that may avoid the expense and other disadvantages of litigation. The statute contains no such explicit prohibition and we have been directed to no legislative history suggesting that the Legislature intended to preclude the agency from pursuing such a course. The 90-day limitation is not rendered

service had not been made within the time prescribed by Government Code section 65009, subdivision (c)(1)(E). Although recognizing the general rule that "when two statutes relate to the same subject, the more specific one will control unless they can be reconciled" (125 Cal.App.4th at p. 1118), and that the CEQA provision is the more specific, the court dismissed the petition on the ground that it was untimely under Government Code section 65009. The court held that the two limitation provisions can be reconciled because "the time period of the Public Resources Code is not a strict time limit, as is the 90-day period contained in the Government Code." (125 Cal.App.4th at p. 1122.) This decision has no application to the issue before us in the present case because the city there did not stipulate to an extension of the time to make service of the petition.

[12] If a party challenges an agency decision directly affecting a specific development or permit, invoking the 90-day limitation under Government Code section 65009, subdivision (c)(1), (c)(1)(D) or (E), the project proponent would be a necessary party to the litigation and an effective tolling agreement could not be entered without its consent.

meaningless by this reading of the statute because in what undoubtedly is the more typical situation, the agency will not agree to extend the limitation period.

■ Thus, we conclude that the tolling agreements entered between SPAWN and the county were valid and effective, and thus that the trial court properly sustained their demurrers to the complaint in intervention.[13]

## Disposition

The judgment dismissing the complaint in intervention is affirmed.

Siggins, J., and Jenkins, J., concurred.

A petition for a rehearing was denied May 11, 2012, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied July 11, 2012, S202887. Cantil-Sakauye, C. J., did not participate therein.

---

[13] SPAWN's request that we take judicial notice of certain legislative history materials is denied as unnecessary to the disposition of this appeal.