[No. G033763. Fourth Dist., Div. Three. Jan. 18, 2005.]

ROYALTY CARPET MILLS, INC., Plaintiff and Appellant, v.
CITY OF IRVINE et al., Defendants and Respondents;
ESSEX PROPERTY TRUST, INC., Real Party in Interest and Respondent.

**COUNSEL**

Lewis Brisbois Bisgaard & Smith and Daniel V. Hyde for Plaintiff and Appellant.

Rutan & Tucker, Joel D. Kuperberg and Todd O. Litfin for Defendants and Respondents.

Manatt, Phelps & Phillips, Roger A. Grable, Susan K. Hori, Jack S. Yeh and Melissa D. Goetz for Real Party in Interest and Respondent.

OPINION

**FYBEL, J.—**

INTRODUCTION

Essex Property Trust, Inc. (Essex), applied for a conditional use permit to construct an apartment building in an industrial area of Irvine, California (the City). The City issued a negative environmental declaration and a conditional use permit. Royalty Carpet Mills, Inc. (Royalty), filed a petition for writ of mandate challenging the City's actions, alleging the City failed to comply with the California Environmental Quality Act (CEQA) when it issued the negative declaration and the conditional use permit without preparing an environmental impact report (EIR). The trial court granted the City's motion to dismiss the petition. The court concluded that although the petition was timely filed, it was not timely served. We affirm.

■ As a general principle, if two different statutes of limitation apply to a particular claim, then the shorter period controls over the longer one, unless the statutes can be harmonized. Here, two different statutes apply to the period for service of Royalty's petition, and can be harmonized. Government Code section 65009, subdivision (c)(1)(E) applies generally to challenges to a conditional use permit, and requires personal service within 90 days after the challenged public agency action. Public Resources Code sections 21167 and 21167.6 apply specifically to challenges to a conditional use permit on the ground of noncompliance with CEQA. Public Resources Code section 21167.6, subdivision (a) states personal service of the petition shall be made within 10 business days after the filing of a petition challenging the public agency's action; the petition must be filed no later than 30 days after the agency posts a notice of determination (Pub. Resources Code, § 21167, subd. (b)), which is required no later than five working days after the decision is made (*id.*, § 21152, subd. (a)). Therefore, under the Public Resources Code any petition challenging a public agency's action under CEQA must be personally served no later than about 45 days (giving leeway for working days) after the agency's action. However, under decade-old case law, unchanged by the Legislature, service of a petition may be perfected beyond the time set forth in the Public Resources Code upon a showing of good cause. (*Board of Supervisors v. Superior Court* (1994) 23 Cal.App.4th 830, 846–848 [28 Cal.Rptr.2d 560].) Here, the petition was served on the 97th day after the City's approval of Essex's conditional use permit.

The legislative policies of both CEQA and Government Code section 65009 support a short period by which a party may challenge a public agency's action regarding a conditional use permit. The Legislature provided

that the 90-day period of Government Code section 65009 is an absolute cut-off, beyond which relief for failure to serve a petition cannot be granted. Unless this statutory cut-off is applied to this case, there would be no time after which service of the petition would be untimely, assuming good cause supported an extension of time under the Public Resources Code. That result would be inconsistent with the legislative purposes of the statutes at issue.

Therefore, we hold that the 90-day limit on service contained in Government Code section 65009 operates as a limitations bar, notwithstanding the City's agreement to extend the nominally shorter limitations period contained in Public Resources Code section 21167.6. The trial court correctly dismissed Royalty's petition. We also hold the trial court did not err in denying Royalty's motion for leave to amend. Any amendment would have been futile because the proposed amended petition challenged the same public agency action on the same grounds, sought the same relief, and suffered the same dispositive defect.

## STATEMENT OF FACTS

■ The facts are drawn from Royalty's petition. As with a demurrer to a complaint in a civil action, when a trial court considers a motion to dismiss a petition for writ of mandate it assumes the truth of the petition's allegations. (Code Civ. Proc., § 1109; *W. R. Grace & Co. v. Cal. Emp. Com.* (1944) 24 Cal.2d 720, 726 [151 P.2d 215].)

Royalty manufactures carpeting at a plant located in an industrial area of the City. Essex sought to construct a 132-unit apartment complex (the Project) near Royalty's plant. Essex applied for a conditional use permit[1] to build the Project.

On September 5, 2002, the City's Department of Community Development issued an initial study[2] and a notice of intent to adopt a negative declaration[3] for the Project. The department of community development found an EIR[4]

---

[1] "Variances and conditional use permits are methods by which a property owner may seek relief from the strict terms of a comprehensive zoning ordinance." (Curtin, Jr., Curtin's Cal. Land Use and Planning Law (20th ed. 2000) p. 42.)

[2] " 'Initial study' means a preliminary analysis prepared by the lead agency to determine whether an EIR or a negative declaration must be prepared or to identify the significant environmental effects to be analyzed in an EIR." (Cal. Code Regs., tit. 14, § 15365.)

[3] " 'Negative declaration' means a written statement briefly describing the reasons that a proposed project will not have a significant effect on the environment and does not require the preparation of an environmental impact report." (Pub. Resources Code, § 21064.)

[4] "An environmental impact report is an informational document which, when its preparation is required by this division, shall be considered by every public agency prior to its approval or disapproval of a project. The purpose of an environmental impact report is to

did not need to be prepared because " 'revisions to the project made or agreed to by the applicant would avoid or mitigate the effects of the project to a point where clearly no significant effects would occur . . . .' " Royalty submitted extensive comments objecting to the construction of an apartment complex so close to its industrial operations, identifying inadequacies in the City's initial study and proposed negative declaration, and arguing the proposed mitigation measures for the Project failed to fully mitigate the potentially significant adverse impacts on public health and safety.

The City's planning commission denied the application for a conditional use permit for the Project. The planning commission found the requested findings of mitigation could not be made, the proposed residential development of the site was not compatible with the surrounding industrial land uses, and the information in the negative declaration did not sufficiently address the environmental issues raised by the public comments or support a finding that all impacts were mitigated to a less than significant level.

Essex appealed the denial of its application for a conditional use permit to the city council and submitted additional information that had not been included in the initial study or the negative declaration. Royalty again objected to the issuance of a conditional use permit.

On May 13, 2003, the city council passed a resolution adopting a mitigated negative declaration[5] and approving a conditional use permit for the Project. On May 21, six working days later, the City filed and posted a notice of determination for the Project.

On June 20, 2003, Royalty filed and served the City and Essex by mail with a notice of commencement of proceedings, a verified petition for writ of mandate, and a request for preparation of the record of proceedings. On June 27, Royalty personally served the petition, a summons, and other documents on Essex.

provide public agencies and the public in general with detailed information about the effect which a proposed project is likely to have on the environment; to list ways in which the significant effects of such a project might be minimized; and to indicate alternatives to such a project." (Pub. Resources Code, § 21061.)

[5] " 'Mitigated negative declaration' means a negative declaration prepared for a project when the initial study has identified potentially significant effects on the environment, but (1) revisions in the project plans or proposals made by, or agreed to by, the applicant before the proposed negative declaration and initial study are released for public review would avoid the effects or mitigate the effects to a point where clearly no significant effect on the environment would occur, and (2) there is no substantial evidence in light of the whole record before the public agency that the project, as revised, may have a significant effect on the environment." (Pub. Resources Code, § 21064.5.)

On Friday, August 15, 2003, the City's attorney faxed a letter to Royalty demanding dismissal of the petition because the City had not been personally served with the petition or the request for preparation of the record of proceedings. On Monday, August 18, Royalty personally served the petition and request on the City.

On September 11, 2003, Royalty filed a motion for an extension of time to personally serve the petition on the City to and including August 20, pursuant to Code of Civil Procedure section 473, subdivision (b), and the equitable powers of the court under *Board of Supervisors v. Superior Court, supra,* 23 Cal.App.4th 830.

On September 15, 2003, the City filed a motion to dismiss, arguing Royalty failed to personally serve the petition within the time periods of either Government Code section 65009, subdivision (c)(1)(E), or Public Resources Code section 21167.6, subdivision (a).

The parties stipulated Royalty's motion for an extension of time should be granted with respect to relief from the failure to personally serve the City within 10 business days of the filing of the petition, under Public Resources Code section 21167.6, subdivision (a). The parties also stipulated that relief would be without prejudice to the City's argument the petition was not personally served within 90 days after the conditional use permit was approved by the City, as required by Government Code section 65009, subdivision (c)(1)(E).

On December 19, 2003, the trial court granted the motion to dismiss the petition because Royalty had not personally served the City within the time period specified in Government Code section 65009, subdivision (c)(1)(E). The court's minute order states, in relevant part: "By the terms of [Government Code] section 65009[, subdivision] (c)(1), the subject time period runs '90 days after the legislative body's *decision.*' That time period expired. . . . [¶] While the Petitioner calls its case 'a pure CEQA proceeding,' the Petition itself shows that the matter is 'an action . . . to attack, review, set aside, void, or annul any decision on the matters listed in [Government Code s]ection 65901 . . .' (relating to conditional use permits)."

Royalty sought leave to file an amended petition. The trial court denied the motion for leave to amend, and entered judgment denying the petition for writ of mandate.

Discussion

I.

What is the Applicable Statute of Limitations?

A. *Standard of Review*

 We review de novo an order granting a motion to dismiss a petition for writ of mandate. (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869 [13 Cal.Rptr.3d 420].)

B. *Specific Versus General Statutes*

 As a general rule, when two statutes relate to the same subject, the more specific one will control unless they can be reconciled. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476–477 [66 Cal.Rptr.2d 319, 940 P.2d 906]; *People v. Wheeler* (1992) 4 Cal.4th 284, 293 [14 Cal.Rptr.2d 418, 841 P.2d 938]; *San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147]; *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].) When the two statutes can be reconciled, they must be construed "in reference to each other, so as to 'harmonize the two in such a way that no part of either becomes surplusage.' " (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 778–779 [38 Cal.Rptr.2d 699, 889 P.2d 1019].)

In *Gonzalez v. County of Tulare* (1998) 65 Cal.App.4th 777, 781 [76 Cal.Rptr.2d 707] (*Gonzalez*), the petitioners challenged a zoning change and the issuance of special use permits. The county demurred on the ground the petitioners failed to timely serve the petition. (*Id.* at pp. 781–782.) At the time, Government Code section 65009 required an action challenging the adoption or amendment of a zoning ordinance to be filed and served within 120 days after the legislative body's decision. (*Gonzalez, supra,* at pp. 782–783.) Government Code section 65860, which permits a property owner to challenge a zoning ordinance as violating the general plan, required the action to be filed within 90 days of the enactment or amendment of the ordinance. (*Gonzalez, supra,* at pp. 783–784.) The Court of Appeal concluded both section 65009 and section 65860 provided limitations periods for "lawsuits involving local zoning-related decisions." (*Gonzalez, supra,* at p. 786.) As the more specific statute, section 65860's 90-day limitations

period applied. (*Gonzalez, supra,* at p. 787.) Section 65009's 120-day service requirement, which was not contradicted by any provision of section 65860, also applied. (*Gonzalez, supra,* at p. 787.)

Royalty argues the trial court erred by determining the statute of limitations applicable to challenges to conditional use permits—Government Code section 65009, subdivision (c)(1)(E)—applied in this case. Royalty contends the proper statute of limitations is set forth in CEQA, at Public Resources Code sections 21167, subdivision (b), and 21167.6, subdivision (a). Under either the Government Code or the Public Resources Code, Royalty timely filed its petition. The alleged failure to timely serve the petition is at issue here.

### C. *Government Code Section 65009*

Government Code section 65009 sets forth the limitations period for filing and serving a petition challenging a conditional use permit: "[N]o action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision: [¶] . . . [¶] (E) To attack, review, set aside, void, or annul any decision on the matters listed in Sections 65901 and 65903, or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit." (Gov. Code, § 65009, subd. (c)(1)(E).)[6] After expiration of the limitations period, "all persons are barred from any further action or proceeding." (Gov. Code, § 65009, subd. (e); see *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 767–768 [16 Cal.Rptr.3d 404, 94 P.3d 538].)

Even if a petition is timely filed under Government Code section 65009, subdivision (c), if it is not personally served as required by statute, the petition must be dismissed. (*Wagner v. City of South Pasadena* (2000) 78 Cal.App.4th 943, 948–951 [93 Cal.Rptr.2d 91]; *Gonzalez, supra,* 65 Cal.App.4th at p. 791.) In *Beresford Neighborhood Assn. v. City of San Mateo* (1989) 207 Cal.App.3d 1180, 1185 [255 Cal.Rptr. 434], the petitioners filed a complaint 90 days after the meeting at which the city council granted an application for certification of an EIR, permit approvals, a zoning variance, and general plan amendments. That complaint was never served on the city. (*Ibid.*) The petitioners filed and served a first amended complaint 121 days after the city council meeting. (*Ibid.*) The Court of Appeal concluded the claims relating to applications for conditional use permits and variances were barred because "[t]he city was not served within 120 days of its . . . decisions

---

[6] Government Code sections 65901 and 65903 address decisions regarding "applications for conditional uses or other permits," and appeals from those decisions, respectively.

approving the permits and residential planned development variance . . . , and establishing the conditions for such approval." (*Id.* at p. 1186.)[7]

█ Government Code section 65009 explicitly acknowledges other limitations periods may apply. Except under certain circumstances not relevant to this appeal, "this section shall not affect any law prescribing or authorizing a shorter period of limitation than that specified herein." (Gov. Code, § 65009, subd. (g).) "By this language, the Legislature recognized other more specific statutes could exist which prescribe shorter limitations periods than that in former section 65009, subdivision (c), and any such other, more particular, provision should hold sway whenever applicable. The legislative awareness apparent in subdivision (g) is consistent with the legislative intent underlying former section 65009—to restrict the time within which local zoning decisions may be challenged in the courts. [Citation.]" (*Gonzalez, supra,* 65 Cal.App.4th at p. 787.)

### D. *Public Resources Code Sections 21167 and 21167.6*

█ Public Resources Code section 21167 provides, in relevant part: "An action or proceeding to attack, review, set aside, void, or annul the following acts or decisions of a public agency on the grounds of noncompliance with this division shall be commenced as follows: [¶] . . . [¶] (b) An action or proceeding alleging that a public agency has improperly determined whether a project may have a significant effect on the environment shall be commenced within 30 days from the date of the filing of the notice required by . . . subdivision (a) of Section 21152."[8] Public Resources Code section 21152, subdivision (a) requires that a notice of determination be filed within five working days after the local agency approves the project.

█ Public Resources Code section 21167.6, subdivision (a) provides, "the complaint or petition . . . shall be served personally upon the public agency not later than 10 business days from the date that the action or proceeding

---

[7] *Beresford Neighborhood Assn. v. City of San Mateo* interpreted former Government Code section 65907. In 1995, the 120-day limitations period in former section 65907 was reduced to 90 days. The limitations provisions of former section 65907 were later recodified in section 65009. (Stats. 1996, ch. 799, § 2.)

[8] On appeal, Royalty also argues subdivisions (c) and (d) of Public Resources Code section 21167 apply. We disagree. Subdivision (c) of section 21167 applies when an EIR prepared by the public agency does not comply with CEQA, and is inapplicable in this case because no EIR was prepared. Subdivision (d) of section 21167 applies when no notice of determination is filed; here, the City filed a notice, albeit more than five working days after the Project was approved. A leading treatise in this area of the law argues that in such a case, the 30-day limitations period runs from the date the notice is posted. (2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2003) § 23.21, pp. 937–938.) Here, the notice was posted one day late. Therefore, the time for filing the petition should have been extended one day, with service still required 10 business days after the filing. This extension does not affect our analysis.

was filed." Until the petition is properly served, the trial court does not have jurisdiction over the public agency. "Public Resources Code section 21167.6[, subdivision](a), read in light of the numerous other CEQA procedural provisions which require prompt prosecution and encourage speedy resolution of CEQA matters, does include the requirement for jurisdictional service of the petition in CEQA proceedings." (*Board of Supervisors v. Superior Court, supra*, 23 Cal.App.4th at p. 844.) However, dismissal is not mandatory if the petitioner fails to effect service within the statutory time period. (*Id.* at p. 847.) Therefore, the City was permitted to, and stipulated to, extend the time to challenge the failure to comply with the service requirements of Public Resources Code section 21167.6, subdivision (a).

### E. *Interplay Between the Statutes*

Royalty argues the trial court erred in applying Government Code section 65009, subdivision (c)(1)(E). Royalty contends that because Public Resources Code section 21167.6, subdivision (a) is the more specific statute of limitations, it controls, and the two statutes cannot be reconciled. For the following reasons, we conclude this argument does not have merit. Government Code section 65009, subdivision (c)(1)(E) applies generally to challenges to a conditional use permit. Public Resources Code sections 21167 and 21167.6 apply specifically to challenges to a conditional use permit on the ground of noncompliance with CEQA. Thus, challenges under the Public Resources Code constitute a subset of general challenges to conditional use permits. Public Resources Code section 21167, subdivision (b), and Government Code section 65009, subdivision (c)(1)(E) relate to the same subject—the limitations period applicable to claims that a public agency improperly issued a conditional use permit. Both Government Code section 65009, subdivision (c)(1)(E) and Public Resources Code section 21167.6, subdivision (a) relate to the time period within which service of a petition challenging issuance of a conditional use permit must be made.

The legislative policy behind both Government Code section 65009 and CEQA is the prompt resolution of challenges to the decisions of public agencies regarding land use. (See *Travis v. County of Santa Cruz, supra*, 33 Cal.4th at p. 774 ["The express and manifest intent of section 65009 is to provide local governments with certainty, after a short 90-day period for facial challenges, in the validity of their zoning enactments and decisions"]; *Board of Supervisors v. Superior Court, supra*, 23 Cal.App.4th at p. 844 [CEQA challenges encourage "speedy resolution"].)

In *Committee for a Progressive Gilroy v. State Water Resources Control Bd.* (1987) 192 Cal.App.3d 847, 857–858 [237 Cal.Rptr. 723], the Court of Appeal considered the application of two conflicting statutes of limitations:

Water Code section 13330, subdivision (a), which provided for a 30-day limitations period, and Public Resources Code section 21167, subdivision (d), which provided for a 180-day limitations period. The petition was timely filed under the Public Resources Code, but untimely filed under the Water Code. (192 Cal.App.3d at pp. 857–858.) The two statutes of limitation were in direct conflict, and the appellate court was required to choose one of them to apply. It did so by concluding the Public Resources Code contained the more specific statute of limitations, which controlled over the Water Code's more general limitations period. (*Id.* at p. 859.)

In this case, the time periods set forth in the Government Code and the Public Resources Code can be reconciled. As will be shown, the time period of the Public Resources Code is not a strict time limit, as is the 90-day period contained in the Government Code.

■ In 1994, in *Board of Supervisors v. Superior Court, supra,* 23 Cal.App.4th at page 848, Division Two of the Fourth Appellate District concluded strict compliance with the time requirements set forth in Public Resources Code section 21167.6 may be excused for "good cause." In reaching its conclusion, that court noted Public Resources Code section 21167.6 does not require dismissal for failure to comply with the service requirements of subdivision (a). (*Board of Supervisors v. Superior Court, supra,* 23 Cal.App.4th at p. 846.) "If the Legislature intends that the failure to comply with a specific and unusually short provision for service of process in a particular action *shall* result in an automatic dismissal, presumably it knows how to say so." (*Ibid.*)

Government Code section 65009 is an excellent example of how the Legislature shows its intention that failure to comply with a short service period shall result in an automatic dismissal of the action. The statute accomplishes this result by providing: "Upon the expiration of the time limits provided for in this section, all persons are barred from any further action or proceeding." (Gov. Code, § 65009, subd. (e).)

In *Board of Supervisors v. Superior Court, supra,* 23 Cal.App.4th at page 843, the appellate court stated that any extension of the service requirement should not go beyond "a few weeks." The court specifically declined to set an outer limit on the extension that could be granted, concluding that to do so would require an improper act by "judicial fiat," and presumably looking to the Legislature to make any change or clarification it deemed appropriate. (*Id.* at p. 843, fn. 10.)

▉▉ In 2002, the Legislature amended Public Resources Code section 21167.6, subdivision (a) to make clear that service of the petition must be made personally on the public agency. (Stats. 2002, ch. 1121, § 4.) (In *Board of Supervisors v. Superior Court, supra,* 23 Cal.App.4th at pages 840–841, the Court of Appeal read into section 21167.6, subdivision (a) a personal service requirement.) When the Legislature amended the statute in 2002, it did not add a definite outer limit on the time period within which service may be effected under section 21167.6. Nor has the Legislature done so at any other time. We must therefore conclude the Legislature intended the time period for service set forth in section 21167.6, subdivision (a) may be extended for good cause. " 'The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended.' " (*Walker v. Superior Court* (1988) 47 Cal.3d 112, 129 [253 Cal.Rptr. 1, 763 P.2d 852].)

If the failure to comply with the service requirement under Public Resources Code section 21167.6, subdivision (a) *required* dismissal (as does failure to comply with Government Code section 65009, subdivision (c)(1)(E)), the two statutes would be in direct conflict and could not be harmonized. Then the shorter time period of the Public Resources Code could not be extended and it would control over the 90-day period. Under those circumstances, service would have to be perfected within the shorter time period contained in the Public Resources Code. However, the requirement of timely service under Public Resources Code section 21167.6, subdivision (a) may be extended for good cause.

▉▉ As a result, the statutes can and should be harmonized. To accomplish the Legislature's purpose of limiting the time in which a decision regarding a conditional use permit can be challenged by filing and serving a petition, in no event can service of the petition be accomplished beyond the 90-day time bar contained in the Government Code. To conclude otherwise would be to ignore the absolute limitations bar contained in Government Code section 65009.

Our holding derives in large part from the conclusion in *Board of Supervisors v. Superior Court, supra,* 23 Cal.App.4th at page 848, that the seemingly mandatory service requirement of Public Resources Code section 21167.6, subdivision (a) can be extended for good cause. That court's opinion, however, was not unanimous; Justice Hollenhorst concurred in the majority's result, but dissented from its reasoning. He disagreed with the

majority's conclusion that Public Resources Code section 21167.6, subdivision (a) includes a requirement for jurisdictional service in CEQA proceedings, and would have held the service provision in that statute is a notice provision only. (*Board of Supervisors v. Superior Court, supra,* 23 Cal.App.4th at pp. 850–852 (conc. & dis. opn. of Hollenhorst, J.).) Justice Hollenhorst challenged the premise that failure to comply with the jurisdictional requirement of personal service under Public Resources Code section 21167.6, subdivision (a) could be excused for good cause. (*Board of Supervisors v. Superior Court, supra,* 23 Cal.App.4th at p. 855, conc. & dis. opn. of Hollenhorst, J.).) While we share Justice Hollenhorst's concern, the fact the Legislature did not add an absolute time bar to section 21167.6 when it amended the statute in 2002—or at any other time in the years since the *Board of Supervisors v. Superior Court* decision—compels our conclusion in this case.

## II.

### MOTION FOR LEAVE TO AMEND

 We review the trial court's denial of Royalty's motion for leave to amend the petition for abuse of discretion. (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486 [86 Cal.Rptr.2d 547].) Generally, motions for leave to amend are liberally granted. (*Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 596 [71 Cal.Rptr.2d 657]; *Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 945 [65 Cal.Rptr.2d 777].) When amendment would be futile because the amended petition would be barred by the statute of limitations, the trial court does not abuse its discretion in denying the motion for leave to amend. (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 230–231 [31 Cal.Rptr.2d 525].)

The proposed amended petition for writ of mandate would have changed the following: (1) deleted the phrase "conditional use permit" from two locations in the petition, one of which was in a direct quote from the City's notice of intent to adopt a negative declaration; (2) changed a reference from "one-lane streets" to " 'streets with one lane in each direction' "; (3) added a paragraph alleging the City had improperly delegated discretionary approval for the Project's mitigation measures to other city officials and departments and to other agencies; and (4) changed the prayer to a request for an order mandating the preparation of an EIR, rather than a judgment setting aside the City's actions approving and permitting the Project.

 The proposed amendments would not have changed Royalty's petition in any substantive way. The amended petition would have sought the same relief—stopping the Project until an EIR was prepared. Royalty's

arguments to the contrary are unavailing. There is no practical difference between an order suspending the Project until an EIR was prepared, and a judgment setting aside the conditional use permit that authorized the Project. No matter how the prayer is rephrased, the relief sought is the same. As the trial court noted in denying the motion for leave to amend, "I think it's still an attack upon the same conditional use permit. And it was untimely then, it's untimely now." The court was correct in its analysis. Government Code section 65009, subdivision (c)(1)(E) sets the same 90-day limitation period for any action to "attack, review, set aside, void, or annul any decision" regarding a conditional use permit. A request to suspend a project permitted by a conditional use permit is an attack on the decision to issue the permit, and is time-barred for the same reason the original petition was barred.

■ Royalty argues the amended petition would have challenged the City's failure to comply with CEQA by improperly delegating discretionary approval for certain mitigation measures. This, too, is an attack on the conditions attached to the conditional use permit, and is time-barred. Government Code section 65009, subdivision (c)(1)(E), by its terms, applies not only to a challenge to the issuance of a conditional use permit, but also to any action to "determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit."

The gravamen of Royalty's proposed amended petition remained the challenge to the Project for lack of compliance with CEQA. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22–23 [32 Cal.Rptr.2d 244, 876 P.2d 1043].) Like the original petition, the proposed amended petition was governed by both Government Code section 65009 and Public Resources Code sections 21167 and 21167.6. The proposed amended petition would not have been timely under Government Code section 65009, and amendment would therefore have been futile.

■ Finally, Royalty argues the trial court abused its discretion in denying the motion for leave to amend because amendment would have allowed a decision on the merits, and no party was prejudiced by the delay in service. Yet, the fact of the matter remains that Government Code section 65009, unlike Public Resources Code section 21167.6, requires dismissal of any proceeding that is not filed and served by an absolute time limit. There is no good cause exception in Government Code section 65009, and lack of prejudice or a desire to decide the matter on its merits does not permit avoidance of that statute's mandatory nature.

## DISPOSITION

The judgment is affirmed. Respondents to recover their costs on appeal.

Aronson, Acting P. J., and Ikola, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 13, 2005.