Filed 11/24/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DAVID FOROUDI, | B291302 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC555258) |
| v. | |
| THE AEROSPACE CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert L. Hess, Judge.  Affirmed.

Donna Bader and Joseph W. Klobas for Plaintiff and Appellant.

Proskauer Rose, Kate S. Gold, Philippe A. Lebel and Cole D. Lewis for Defendant and Respondent.

_____

David Foroudi filed a complaint against his former employer, The Aerospace Corporation (Aerospace), alleging he was selected for a company-wide reduction in force because of his age. A federal district court struck from his complaint disparate impact and class allegations, finding he failed to exhaust his administrative remedies with respect to such claims. After the case was remanded to the superior court, Foroudi amended his original administrative charges to include class and disparate impact allegations. He then sought leave to amend his complaint in order to reallege class and disparate impact claims. The trial court denied the request after finding the administrative amendments were untimely and unauthorized. The court subsequently granted Aerospace's motion for summary judgment. On appeal, Foroudi contends the trial court erred in denying his request for leave to amend and in granting Aerospace's motion for summary judgment. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

Aerospace operates a non-profit Federally Funded Research and Development Center. It is responsible for providing technical analyses and assessments to the federal government on launch, space, and related ground systems that serve the national interest. It derives more than 90 percent of its funding from federal defense and intelligence agencies.

Foroudi has degrees in mathematics and computer science, industrial engineering and operations research, and computer and information science. He was hired by Aerospace in 2007, when he was 55 years old, to work as a senior project engineer. In 2009, the program Foroudi had been hired to work on was

---

[1] We grant Foroudi's February 13, 2020 request for judicial notice and motion to augment.

cancelled, and he was transferred to Aerospace's Navigation division.  His position was a "Level 3" Senior Project Engineer/Technical Lead for the GPS/OCX Program Office.

Over the course of his employment at Aerospace, Foroudi's supervisors counseled him regarding deficiencies in his interpersonal and communication skills.  He was warned that his failure to improve his performance in these areas could result in corrective action.  Foroudi's annual performance evaluations in 2010 and 2011 identified his interpersonal and communication skills as areas for improvement, but noted he "meets expectations" in those areas.[2]  Foroudi was also counseled for failing to comply with Aerospace's corporate travel policies and procedures on several occasions, although no corrective action was ever taken against him.

Per the terms of a collective bargaining agreement, each year Aerospace management assigned all bargaining unit employees, including Foroudi, a value ranking based on their performance, the strength and breadth of their skills, and the utility of their skills and performance to the company.  The managers would place the employees into five groups, known as "bins," with bin 1 containing the highest-ranked employees and bin 5 containing the lowest.  In 2010 and 2011, Foroudi was placed in bin 5.  His ranking reflected his managers' assessment of his deficiencies in interpersonal communication skills and limited background in navigation relating to GPS, despite being a technical lead on a GPS project.

---

[2]     The possible ratings were far exceeds expectations, exceeds expectations, meets expectations, and significantly falls short of expectations.

In late 2011, Aerospace learned that its funding would be significantly impacted by projected Department of Defense budget cuts.  In response, Aerospace began implementing a company-wide reduction in force (RIF).  The pool of eligible employees consisted of those ranked in bins 4 and 5 in 2011, new employees that were unranked, and employees on displaced status.  Upper level management then used an "RIF Selection Matrix" to rank RIF-eligible employees in their units based on several criteria, including bin ranking, performance issues, and skills and areas of expertise applicable to the unit's anticipated future workload.

Foroudi was placed in the RIF-eligibility pool given his 2011 ranking in bin 5.  His managers then selected him for the RIF purportedly because he was in the lowest ranking bin, he did not have a strong background in scientific, algorithmic applications for GPS navigation, and he had received prior counseling regarding deficiencies in his interpersonal and communication skills and failure to adhere to company travel policies and procedures.  In March 2012, Aerospace notified Foroudi that he would be laid off as part of the RIF.

Aerospace's revenue from government contracts decreased by nearly $36 million in fiscal year 2012, and it laid off 306 of its 4,000 employees in connection with the RIF.  Of the 96 employees that remained in Foroudi's former division, one was in his 80's, two were in their 70's, 17 were in their 60's, 46 were in their 50's, 24 were in their 40's, and six were in their 30's.

Aerospace did not hire anyone to replace Foroudi.  Instead, his position was eliminated and his remaining duties were given to an existing employee in the Navigation division, Van Nuth.  Nuth is 14 years younger than Foroudi and, at the time, was a

4

"Level 2" engineer.  Nuth, who has a doctorate in geophysics with a concentration in satellite geodesy, joined the Navigation division about a year after Foroudi.  According to one of Nuth's supervisors, Alexander Polack, he was specifically chosen to join the division to "address the most critical configuration item" for the OCX program, called the "navigation configuration item." Polack described this as the "jewel[] of OCX and GPS."  Polack considered Nuth to be an expert in GPS technology.

*Foroudi's DFEH Complaint and EEOC Charge*

In January 2013, Foroudi filed a complaint with the California Department of Fair Employment and Housing (DFEH) alleging he experienced discrimination, harassment, and retaliation because of his age, association with a member of a protected class, family care or medical leave, national origin, and religion.  Foroudi did not allege any specific facts to support these claims.

The next day, the DFEH provided Foroudi a letter stating it was closing his case.  The DFEH also informed Foroudi that the letter served as a "Right-to-Sue Notice," and he could now pursue a civil action against Aerospace under the provisions of the Fair Employment and Housing Act (FEHA).

More than a year later, Foroudi filed an amended DFEH complaint, which alleged as follows:  "I believe I was laid off from my position . . . because of my religion (Muslim), my age (60 years old), ancestry/national origin (Persian) as other younger, non-Muslim, and non-Persian employees were not laid off.  Other Muslim employees were also laid off. . . .  Prior to the notice of employees being subjected to layoff within the next eight (8) months, I received excellent employee evaluation and commendations.  After the notice of pending layoffs, [my

5

managers] began telling me that I was not following directives, denied me the ability to choose certain hotels when traveling and gave me low ranking grade which resulted in me being laid off. I believe the layoff was pretext and discriminatory and due to my protected basis (religion, age and ancestry/national origin)."

According to Foroudi, he also filed a charge of discrimination with the federal Equal Employment Opportunity Commission (EEOC) in January 2013. The charge, however, does not appear in the record on appeal. In May 2014, the EEOC issued Foroudi a right-to-sue letter.

*Foroudi's Civil Complaint*

In August 2014, Foroudi and four other former Aerospace employees filed a civil complaint in superior court against Aerospace, alleging age discrimination in violation of the FEHA, wrongful termination in violation of public policy, failure to prevent discrimination, and unfair competition. The complaint alleged Aerospace used the RIF as a pretext to hide its true and illegal motivation to terminate Foroudi because of his age. Further, it alleged the RIF had a disparate impact on employees over the age of 50.

In January 2015, Foroudi and the other plaintiffs filed a first amended complaint (FAC) to add a cause of action under the federal Age Discrimination in Employment Act (ADEA). The FAC also added class allegations.

Based on the new federal cause of action in the FAC, Aerospace removed the case to federal court. While in federal court, Aerospace moved to strike the disparate impact and class allegations from the FAC. The district court granted the motion in April 2015, finding Foroudi's EEOC charge and DFEH complaint did not express an intention to sue on behalf of a class

6

or include disparate impact allegations. As a result, Foroudi failed to exhaust his administrative remedies with respect to those allegations. After the court's ruling, Foroudi dismissed with prejudice his federal ADEA claim, and the matter was remanded to the superior court.

*Foroudi's Attempts to Amend his EEOC Charge and DFEH Complaint*

Sometime around June 2015, Foroudi requested the EEOC reconsider its right-to-sue notice and amend his charge to include class allegations based on age discrimination. Five months later, the EEOC informed him it was reopening his charge based on an "administrative error." The same day, the EEOC issued a new right-to-sue letter, which included a claim that "workers over the age of 40 are being discriminated and laid-off as a class."

About five months later, in April 2016, Foroudi contacted the DFEH to request it "correct documents" to comport with the EEOC's new right-to-sue letter. He also filed an amended DFEH complaint, which included the following new allegations: "I believe that employees over the age of 40, including myself, were discriminated against and laid-off as a class. I further believe that other employees and I were laid-off as part of a facially neutral employment policy or practice, . . . [which] had a disparate and disproportionate impact on employees over the age of 40 being laid-off."

In June 2016, the DFEH provided Foroudi a letter confirming he had filed a complaint and had been interviewed by one of its representatives. The letter told Foroudi he had to approve the changes to the complaint before it could investigate the allegations, which Foroudi did. The DFEH took no further

action on the complaint, and it did not issue a new right-to-sue notice.

*Foroudi's Motion for Leave to File a Second Amended Complaint*

In August 2016, Foroudi moved for leave to file a second amended complaint to add class and disparate impact claims similar to those previously struck by the district court.  He argued an amendment was warranted in light of the fact that, subsequent to the district court's order, the EEOC and DFEH had allowed him to amend his original charges of discrimination to include class and disparate impact allegations.

Aerospace opposed the motion on the basis that amendment would be futile because Foroudi failed to exhaust his administrative remedies with respect to the new claims.  It argued the amended EEOC charge and right-to-sue letter were not sufficient because (1) EEOC notices cannot exhaust claims under the FEHA and (2) the EEOC lacked authority to allow the amendment and issue the amended right-to-sue letter.  Further, it argued the amended DFEH complaint was untimely and unauthorized.

In his reply, Foroudi urged the court to permit amendment under equitable considerations given it was an EEOC "administrative error" that caused any failure to exhaust his administrative remedies.

The court denied Foroudi's motion "for the reasons set forth in [Aerospace's] Opposition and as set forth in the transcript of the hearing" on the motion.

*Aerospace's Motion for Summary Judgment*

Aerospace subsequently moved for summary judgment on the basis that Foroudi could not establish a prima facie case of

age discrimination or provide substantial evidence that Aerospace's reasons for the RIF and his inclusion in the RIF were a pretext for age discrimination. In support, Aerospace submitted evidence establishing the facts summarized above.

In opposition, Foroudi argued Aerospace's discriminatory intent was evident from the fact that (1) he was more experienced and qualified than the younger employee who took over his work, (2) statistics showed the RIF had a disparate impact on older workers, (3) Aerospace did not rehire him after he was laid off; and (4) his managers gave "shifting" reasons for selecting him for the RIF.

In a declaration attached to the opposition, Foroudi claimed Nuth lacked the "breadth of knowledge or leadership skills to perform my job, and in fact Mr. Nuth was a Level 2 Engineer, below my Level 3 Senior Engineer status, and also with fewer responsibilities and less pay." Foroudi claimed he was responsible for giving Nuth "technical direction and task assignments," and he explained that, when travelling on business with Nuth, he took the "lead in project and program meetings" with representatives of the Air Force and a key contractor. Foroudi also attempted to explain away his purported deficiencies in interpersonal and communication skills, as well as his claimed failure to adhere to travel policies.

Foroudi additionally submitted a declaration from Mark Simpson, who is an Aerospace employee and served as the president of the union to which Foroudi belonged. According to Simpson, based on information provided to his office by Aerospace, it was clear the RIF had a severe impact on workers over the age of 50. In support, he cited statistics purportedly showing older employees were selected for the RIF at a

9

significantly higher rate than would be expected from their RIF priority ranking.

The trial court granted Aerospace's motion for summary judgment and entered judgment in its favor. Foroudi timely appealed.

## DISCUSSION

## I. The Trial Court Did Not Abuse Its Discretion in Denying Leave to Amend

Foroudi contends the trial court erred in refusing to grant him leave to amend his FAC to add class and disparate impact claims. The federal district court previously struck similar claims from the FAC on the basis that Foroudi's original EEOC charge and DFEH complaints did not sufficiently exhaust his administrative remedies. Foroudi does not meaningfully challenge the district court's ruling on that issue. Instead, he contends the trial court should have permitted him to reassert the claims based on his subsequent amendments to his EEOC charge in 2015 and DFEH complaint in 2016. We disagree.

### A. Relevant Law

We review the denial of a motion for leave to amend for abuse of discretion. (*Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110, 1124.) "Generally, motions for leave to amend are liberally granted." (*Ibid.*) However, "leave to amend should *not* be granted where, in all probability, amendment would be futile." (*Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685; see *Royalty Carpet Mills, Inc. v. City of Irvine, supra*, 125 Cal.App.4th at p. 1124 ["When amendment would be futile . . . , the trial court does not abuse its discretion in denying . . . leave to amend."].)

10

**B. The 2015 Amended EEOC Charge**

Foroudi's primary contention is that the trial court should have granted him leave to amend because the 2015 amendment to the EEOC charge and the resulting EEOC right-to-sue notice effectively exhausted his administrative remedies for purposes of his proposed class and disparate impact claims. He argues that, at the very least, there were numerous factual issues related to the EEOC charge and notice that precluded the court from finding he failed to exhaust his administrative remedies as a matter of law. Alternatively, he contends equitable principles support allowing amendment because, to the extent he failed to exhaust his administrative remedies, it was due to EEOC's administrative error.

All of Foroudi's arguments related to the EEOC charge and right-to-sue notice suffer the same fatal flaw: the exhaustion of EEOC remedies does not satisfy the exhaustion requirements for state law claims. (*Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1726 (*Martin*).) Here, Foroudi sought to add class and disparate impact claims that were premised exclusively on alleged violations of state law.[3] As a result, all of his arguments related to the EEOC, including his equitable arguments, are irrelevant.

The court in *Martin, supra*, 29 Cal.App.4th 1718, rejected a nearly identical argument to the one Foroudi advances here. In that case, the trial court granted summary judgment in favor

---

[3] In his reply brief, Foroudi insists his proposed SAC sought recovery under both state and federal law. Foroudi did not make such a contention in the trial court or in his opening brief. Presumably, that is because the proposed SAC was clearly premised exclusively on state law.

11

of a defendant on the basis that she failed to exhaust her administrative remedies with respect to a claim for sex discrimination under the FEHA.  (*Id*. at p. 1723.)  The plaintiff had previously filed a charge of age discrimination with the EEOC, which the EEOC then referred to the DFEH.  (*Id*. at pp. 1724–1725.)  The DFEH, in turn, issued a right-to-sue notice. (*Id*. at p. 1725.)  About a year later, the plaintiff amended her EEOC charge to include a claim of sex discrimination, and the EEOC issued a right-to-sue notice on the amended charge.  (*Ibid*.) The plaintiff did not file an amended charge with the DFEH, nor did the state agency take any further action or issue an amended right-to-sue notice.  (*Ibid*.)

On appeal, the plaintiff argued the EEOC right-to-sue notice was sufficient to exhaust her administrative remedies for the sex discrimination claim under the FEHA.  (*Martin*, *supra*, 29 Cal.App.4th at p. 1726.)  The court disagreed, explaining that "an EEOC right-to-sue notice satisfies the requirement of exhaustion of administrative remedies *only* for purposes of an action based on [federal law].  Inasmuch as [the plaintiff] elected to base her action not on [federal law], but on the Fair Employment and Housing Act, the EEOC right-to-sue notice technically did not satisfy the jurisdictional requirement that [the plaintiff] have exhausted her administrative remedies as to the asserted violations of the California statute."  (*Ibid*.)  The same is true here.  (See also *Alberti v. City & County of San Francisco Sheriff's Dept.* (N.D. Cal. 1998) 32 F.Supp.2d 1164, 1174 ["An EEOC right-to-sue letter does not satisfy the jurisdictional requirement of exhaustion of remedies as to FEHA claims."].)

12

Foroudi insists *Martin* is distinguishable because, unlike the plaintiff in that case, he also filed an amended DFEH complaint and was subsequently interviewed by the DFEH. Foroudi fails to explain, however, why these distinctions render the EEOC charge and notice sufficient to exhaust his state law claims. At most, they are relevant to whether he exhausted his remedies with the DFEH, an issue we consider in the next section.

Foroudi's reliance on *Ware v. Nicklin Assocs.* (D.D.C. 2008) 580 F.Supp.2d 158 (*Ware*), is also misplaced. In that case, a federal district court held that, pursuant to a work-share agreement between the EEOC and the District of Columbia Office of Human Rights, the issuance of an EEOC right-to-sue letter afforded the plaintiff the right to pursue claims under both federal law and the District of Columbia Human Rights Act. (*Id.* at p. 164.) Foroudi does not point us to any provisions in the work-share agreement between the EEOC and the DFEH that would have the same effect. *Ware*, therefore, is inapposite.

**C. The 2016 Amended DFEH Complaint**

Foroudi alternatively suggests, albeit in passing, that his second amended DFEH complaint sufficiently exhausted his administrative remedies for purposes of his proposed class and disparate impact claims. We disagree.

Before pursuing a civil action asserting violation of the FEHA, an employee must file an administrative complaint with the DFEH and obtain a right-to-sue letter from the agency. (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 106 (*McDonald*); *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492 (*Romano*).) "Exhaustion of these procedures is mandatory; an employee may not proceed in court

with a FEHA claim without first obtaining a right-to-sue letter." (*McDonald*, *supra*, at p. 106; see *Romano, supra,* 14 Cal.4th at p. 492 ["The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA"].) Moreover, claims in the employee's civil complaint that fall outside the scope of the DFEH complaint are barred. (*Yurick v. Superior Court* (1989) 209 Cal.App.3d 1116, 1123.)

Foroudi seems to concede that his original and first amended DFEH complaints did not exhaust his administrative remedies with respect to any class and disparate impact claims. Nonetheless, he suggests he remedied this oversight when he filed his second amended DFEH complaint in 2016. That amendment, however, came more than three years after the DFEH had permanently closed his case and nearly two years after he filed his civil complaint.[4] Foroudi fails to point us to a single case in which a plaintiff was found to have exhausted his administrative remedies under similar circumstances. Likely, this is because " ' "[t]he basic purpose for the exhaustion doctrine is to lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the wanted relief." ' " (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501.) That purpose would not be served if a plaintiff could exhaust his administrative remedies by adding substantive new allegations to an administrative complaint after the administrative case had been closed and the plaintiff had already filed a civil complaint, as Foroudi attempted to do here.

---

[4] DFEH regulations provide that when the agency amends a complaint in a closed case, it does not reopen the case. (Cal. Code Regs., tit. 2, § 10022, subd. (e).)

Even if we were to overlook this issue, we would still conclude the class and disparate impact allegations in Foroudi's second amended DFEH complaint were untimely.  Foroudi does not dispute that he filed the 2016 amendment well after the statutory deadline to file a complaint with the DFEH.  (See former Gov. Code, § 12960, subd. (d) (Stats. 2005, ch. 642, § 1) [an  employee must file a DFEH complaint within one year of the allegedly unlawful practice].)  He insists, however, the amendment was timely and effective because it relates back to his earlier DFEH complaints.

Although neither party points us to any California authority on the issue, in *Rodriguez v. Airborne Express* (9th Cir. 2001) 265 F.3d 890, the Ninth Circuit held "the relation-back doctrine is available in appropriate circumstances to render timely an otherwise untimely amendment to a charge under FEHA." (*Id*. at p. 898.)  The court explained that, under the relation-back doctrine, an otherwise untimely amendment that asserts a new theory of recovery may be considered timely, but only if the factual allegations in the original DFEH complaint are "able to bear the weight of the new theory added by amendment." (*Id*. at p. 899.)  Moreover, the "mere acceptance of an amendment by DFEH is [not] conclusive that the amendment relates back." (*Id*. at p. 898.)  Instead, the court must conduct a de novo analysis of the issue, giving no weight to the fact that the DFEH accepted the amendment.  (*Ibid*.)

Here, Foroudi's second amended DFEH complaint essentially asserted new class and disparate impact theories of recovery.  For these new theories to be timely under the relation-back doctrine, the factual allegations in the original and first

15

amended DFEH complaints must be able to bear their weight.[5] We conclude they cannot.

There is a "distinction between claims of discrimination based on disparate treatment and claims of discrimination based on disparate impact." (*Raytheon Co. v. Hernandez* (2003) 540 U.S. 44, 52.) In a disparate treatment claim, the employer simply treats the employee less favorably because of a protected trait, and liability depends on whether the protected trait actually motivated the employer's actions. (*Ibid*.) "By contrast, disparate-impact claims 'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.' [Citation.]" (*Id.* at pp. 52–53.)

The factual allegations in Foroudi's original and first amended DFEH complaints could not support a disparate impact theory of recovery. Foroudi's original DFEH complaint failed to include any specific factual allegations, let alone allegations to even suggest Aerospace had a neutral policy that fell more harshly on older employees. While the first amended DFEH complaint added factual allegations, its gravamen was that Foroudi's managers engaged in disparate treatment discrimination by specifically targeting him for the RIF. It alleged, for example, that the managers "began telling [Foroudi] that [he] was not following directives, denied [him] the ability to choose certain hotels when traveling and gave [him] low ranking grade which resulted in [him] being laid off. [The RIF] was pretext and discriminatory and due to [his age]." Like the original complaint, the first amended DFEH complaint did not

---

[5] We assume for the sake of argument that Foroudi's original and first amended DFEH complaints were timely.

16

allege or even suggest any facially neutral policy that fell more harshly on older employees.  As such, neither complaint could support a disparate impact theory of recovery.

Foroudi's original and first amended DFEH complaints likewise could not support class claims related to age discrimination.  Neither complaint alleged that Aerospace discriminated against anyone other than Foroudi based on age.  In fact, the complaints did not even allege that a single other employee in the protected age group was laid off as part of the RIF.  Foroudi insists his first amended DFEH complaint specifically alleged that "workers over the age of 40 are being discriminated and laid-off as a class."  He appears, however, to be quoting from his 2015 first amended EEOC charge, not his 2014 first amended DFEH complaint.

Because Foroudi's original and first amended DFEH complaints cannot support class and disparate impact theories of recovery, the new allegations in his second amended DFEH complaint are untimely.  As a result, Foroudi cannot show he exhausted his administrative remedies with respect to his proposed class and disparate impact claims.  The trial court did not abuse its discretion in denying Foroudi's request to amend the FAC to add such futile claims.

## II.	The Trial Court Did Not Err In Granting Aerospace's Motion for Summary Judgment

Foroudi contends the trial court erred in granting Aerospace's motion for summary judgment.  We disagree.

### A. Standard of Review

A defendant moving for summary judgment or summary adjudication must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete

17

defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).) Our Supreme Court has made clear that the purpose of the 1992 and 1993 amendments to the summary judgment statute was " 'to liberalize the granting of [summary judgment] motions.' " (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542 (*Perry*); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854.) It is no longer called a "disfavored" remedy. Rather, it is "now seen as 'a particularly suitable means to test the sufficiency' of the plaintiff's or defendant's case." (*Perry*, at p. 542.)

On appeal from a grant of summary judgment, we review the record de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)

**B. The Court Properly Sustained Aerospace's Objections to Exhibits Q, R, and S**

Before turning to the merits of Aerospace's motion, we must consider Foroudi's challenges to the trial court's evidentiary rulings. Although we review a summary judgment motion de novo, we review evidentiary rulings made in connection with the motion for abuse of discretion. (*Great American Ins. Cos. v. Gordon Trucking, Inc.* (2008) 165 Cal.App.4th 445, 449.)

Foroudi contends the trial court erred in sustaining Aerospace's objections to three exhibits—Exhibits Q, R, and S—that he submitted in opposition to the motion for summary

18

judgment.[6]  The first, Exhibit Q, consists of numerous tables containing statistics related to the RIF, including the ages, genders, and bin rankings of employees who were subject to the RIF, as well as "hypergeometric evaluations" of the data. The two other exhibits, Exhibits R and S, consist of bar charts purporting to visualize statistics related to the RIF.

Foroudi attempted to lay the foundation for Exhibit Q through the declaration from Mark Simpson, who served as the president of Foroudi's union.  According to Simpson, Aerospace's HR Department provided his union office data related to the RIF, and Exhibit Q is a "tabulation" of that data.[7]  Simpson did not identify who prepared Exhibit Q.  Nor did he attempt to lay a foundation for Exhibits R and S.

Aerospace objected to all three exhibits on numerous grounds, including relevance, lack of foundation, and hearsay.[8]

---

[6]      In his reply brief, Foroudi insists the trial court did not actually sustain Aerospace's objections to Exhibits R and S.  In addition to being completely inconsistent with his opening brief— in which he contends "the trial court erred and abused its discretion in sustaining the objections to . . . Exhibit #Q, R and S"—the argument is untimely.  Accordingly, we decline to consider it.  (See *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–765.)

[7]      Foroudi and his attorney submitted declarations in which they suggested Aerospace provided Exhibit Q to the union. Neither Foroudi nor his attorney, however, provided a foundation for such claims, which are inconsistent with Simpson's declaration.

[8]      Aerospace did not specifically object to Exhibit Q on hearsay grounds.  However, it did assert a hearsay objection to

19

The trial court sustained the objections, but it did not specify the grounds on which it relied.

Foroudi now contends Aerospace waived its objections by failing to request the trial court clarify the basis for its ruling. We are aware of no authority, and Foroudi provides none, for such a proposition. Foroudi cites *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694, in support of his argument, but that case did not involve this issue. Accordingly, we reject Foroudi's claim that Aerospace waived its objections.

Turning to the merits, we conclude the trial court did not abuse its discretion in sustaining Aerospace's hearsay objections to Exhibits Q, R, and S. Foroudi does not dispute that the exhibits contain out-of-court statements offered for the truth of the matters asserted therein. As such, they were properly excluded under the hearsay rule. (Evid. Code, § 1200, subd. (a).)

We reject Foroudi's brief suggestion that the exhibits should have been admitted as party admissions because they were based on data provided by Aerospace. Although Foroudi may have been able to introduce the underlying data under such an exception, it does not extend to the exhibits themselves, which are statistical analyses of that data created by unidentified persons.

### C. Foroudi Failed to Create a Triable Issue of Fact

We now turn to the merits of Aerospace's motion for summary judgment.

California resolves employment discrimination claims by applying a burden-shifting procedure. Under this test, the plaintiff bears the initial burden of proving a prima facie case of

---

Foroudi's Exhibit K, which is identical to Exhibit Q. Foroudi does not raise this as an issue.

discrimination by presenting evidence showing: (1) he was a member of a protected class, (2) he was qualified for the position sought or was performing competently in the position held, (3) he suffered an adverse employment action, and (4) some other circumstance suggests a discriminatory motive. (*Guz, supra*, 24 Cal.4th at pp. 354–355.)

Once the employee sets forth a prima facie case, the burden shifts to the employer to present evidence of a legitimate, nondiscriminatory reason for the adverse employment action. (*Guz, supra*, 24 Cal.4th at pp. 355–356.) If the employer does so, the burden then shifts back to the employee to "offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1004–1005 (*Hersant*).)

"Although an employee's evidence submitted in opposition to an employer's motion for summary judgment is construed liberally, it 'remains subject to careful scrutiny.' [Citation.] The employee's 'subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations.' [Citation.] The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, 'an actual causal link between prohibited motivation and termination.' " (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159.) Moreover, the "stronger the employer's showing of a legitimate, nondiscriminatory reason, the stronger

21

the plaintiff's evidence must be in order to create a reasonable inference of a discriminatory motive." (*Ibid*.)

We will assume, purely for the sake of argument, that Foroudi met his initial burden of establishing a prima facie case of discrimination. The burden, therefore, shifted to Aerospace to demonstrate it had a legitimate, nondiscriminatory reason for Foroudi's termination to overcome the presumption of discrimination.

Foroudi does not contest that Aerospace met its burden, nor could he. Aerospace submitted evidence showing it instituted the company-wide RIF after learning it faced potentially severe cuts to its funding. Its evidence further shows that, using standardized criteria, Foroudi's managers selected him for the RIF because he was one of the lowest ranked employees in his division, he did not have a strong background in scientific, algorithmic applications for GPS navigation, and he had received prior counseling regarding deficiencies in his interpersonal and communication skills and failure to adhere to company travel policies and procedures. These are legitimate, nondiscriminatory reasons explaining the termination and are sufficient to shift the burden back to Foroudi. (See *Martin, supra*, 29 Cal.App.4th at pp. 1731–1732 [employer met its burden by producing evidence that an employee was terminated as part of a company-wide reduction in force as a result of adverse economic conditions].)

In light of Aerospace's showing, Foroudi could avoid summary judgment only by offering "substantial evidence" that Aerospace's reasons were untrue or pretextual, or that it acted with a discriminatory animus, or both, "such that a reasonable trier of fact could conclude the employer engaged in intentional

22

discrimination." (*Hersant, supra*, 57 Cal.App.4th at pp. 1004–1005.)

Foroudi contends he met this burden by submitting evidence showing his job duties were given to Nuth, who is fourteen years his junior and less qualified to perform those duties. Foroudi overlooks, however, that he was not simply replaced by Nuth. Rather, the undisputed evidence shows Aerospace eliminated Foroudi's position and gave his duties to Nuth. Aerospace, in other words, essentially created a new position that combined Foroudi's and Nuth's former duties. It is not enough, therefore, for Foroudi to show he was more qualified than Nuth for his former position. Instead, to raise an inference of discrimination, he must show, at the very least, that he was as qualified as Nuth for the new, combined position. Foroudi makes no attempt to do so.

Foroudi further suggests he raised an inference of discrimination by showing Aerospace gave false reasons for retaining Nuth. Specifically, he insists his evidence shows Polack falsely claimed in a declaration that Nuth has a doctorate in "GPS" as well as "technical and leadership experience in GPS." Even if that were true, which is far from clear,[9] it is irrelevant

---

[9] To support his claim, Foroudi points to Nuth's testimony that he has a doctorate in "geophysics with a concentration in satellite geodesy," and he did not lead certain tasks while working in the Navigation division in 2011. Contrary to Foroudi's suggestions, Nuth's testimony does not disprove Polack's assertions. Initially, it is not self-evident that it would be inaccurate to describe Nuth's doctorate as being in "GPS." Moreover, the fact that Nuth did not lead certain tasks in 2011 does not prove he categorically lacks "technical and leadership experience in GPS."

23

because Polack never claimed in his declaration that these were the reasons Aerospace retained Nuth.

Foroudi next argues he met his burden by presenting statistical evidence showing the RIF "had a severe impact primarily on workers over 50 years of age." Although far from clear, we presume he is referring to Exhibits Q, R, and S, which, as we discussed above, the trial court properly excluded. But even if the statistical evidence were admissible, it is not sufficient to raise an inference of discrimination.

Although statistical evidence may be utilized in disparate treatment cases, "because discriminatory intent must be shown in such a case, statistical evidence must meet a more exacting standard. '[T]o create an inference of intentional discrimination statistics must demonstrate a significant disparity and must eliminate nondiscriminatory reasons for the apparent disparity.' [Citation.]" (*Life Technologies Corp. v. Superior Court* (2011) 197 Cal.App.4th 640, 650 disapproved of on other grounds by *Williams v. Superior Court* (2017) 3 Cal.5th 531.)

Here, the statistical evidence on which Foroudi relies reflects the ages, genders, and bin rankings of Aerospace employees before and after the RIF. It does not account for age-neutral factors that were considered in connection with the RIF, such as an employee's experience, performance, and the anticipated future need for the employee's skills. As such, the statistical evidence does not eliminate nondiscriminatory reasons for any apparent disparities, and does not meet the more exacting standard required to raise an inference of discrimination in a disparate treatment case.

Foroudi further contends he met his burden by submitting evidence showing his purported deficiencies in interpersonal skills and communication—which his managers cited as a reason for his inclusion in the RIF—were insignificant and did not lead to any corrective action. Even assuming that were true, because Foroudi was laid off as part of a company-wide reduction in force, the fact that he was terminated for minor issues alone does not raise an inference of age discrimination. Instead, he would have to show that younger employees with comparable issues, and who were otherwise similarly situated, were not selected for the RIF. Foroudi does not even attempt to make such a showing.

Foroudi briefly asserts three additional arguments, all of which lack merit. First, he contends he met his burden by raising a triable issue as to whether the RIF was necessary. In support, he relies on Simpson's declaration that Aerospace's accounting information shows the company had enough funding to support the workforce through fiscal year 2012. Simpson's lay opinion, based on undisclosed accounting information, is not sufficient to raise a triable issue.[10]

Next, Foroudi points to evidence showing he was previously employed by Boeing as the equivalent of a "Level 4" engineer, yet no Level 4 engineers at Aerospace were subject to the RIF. It is undisputed, however, that Foroudi was a Level 3 engineer at the time of the RIF, and he does not claim Aerospace failed to promote him due to his age. His position with a former employer, therefore, is irrelevant.

Finally, Foroudi points to evidence that he never personally observed an employee over 60 years of age being promoted at

---

[10] Foroudi admits Simpson was not providing an expert opinion.

25

Aerospace.  Foroudi's limited personal observations have minimal probative value and are far too weak to raise an inference of discrimination, even when considered with his other evidence. (See *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1537 [employee's evidence of discrimination must be sufficiently probative to support a finding in his favor based on more than mere speculation, conjecture, or fantasy].)

In sum, we do not find Foroudi's evidence sufficient to withstand summary judgment.  "[G]iven the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred."  (*Guz, supra*, 24 Cal.4th at p. 362.)[11]

## DISPOSITION

The judgment is affirmed.  Aerospace is awarded its costs on appeal.

## CERTIFIED FOR PUBLICATION

BIGELOW, P. J.

We concur:

GRIMES, J.          WILEY, J.

---

[11]    To the extent Foroudi attempts to identify additional disputed issues of material fact or raises other new issues in his reply brief, his arguments are untimely and we decline to consider them.  (See *Reichardt v. Hoffman, supra*, 52 Cal.App.4th at pp. 764–765.)